UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPAGHETTI WAREHOUSE RESTAURANTS, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:25-cv-02727-E |
| SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC, | § § § | JURY DEMANDED |
| Defendant. | § § | |

## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 4

BACKGROUND AND PROCEDURAL HISTORY................................................. 4

LEGAL STANDARD FOR DEFAULT JUDGMENT ............................................ 8

ENTITLEMENT TO JUDGMENT AND PERMANENT INJUNCTION ................ 9

LIABILITY ON WELL-PLEADED ALLEGATIONS............................................. 10

COUNT I – LANHAM ACT - TRADEMARK INFRINGEMENT ......................... 11

COUNT II – LANHAM ACT - UNFAIR COMPETITION ..................................... 12

COUNT III– BREACH OF CONTRACT ............................................................... 13

COUNT IV – COMMON-LAW TRADEMARK INFRINGEMENT, COMMON-LAW AND STATUTORY UNFAIR COMPETITION ...................................................... 14

COUNT V – TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION .... 15

SPECIFIC DAMAGES............................................................................................ 15

PRAYER FOR RELIEF .......................................................................................... 18

CONCLUSION........................................................................................................ 20

CERTIFICATE OF SERVICE ................................................................................ 21

## TABLE OF AUTHORITIES

Page(s)

State Cases

*Eisenhour v. Stafford*,
   No. 9:12-CV-62, 2013 WL 6212725 (E.D. Tex. Nov. 26, 2013) ......................................... 10
*Lindsey v. Prive Corp.*,
   161 F.3d 886 (5th Cir. 1998)................................................................................................ 9
*Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*,
   515 F.2d 1200 (5th Cir. 1975)......................................................................................... 9, 10
*U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*,
   814 F.2d 1011, nc., (5th Cir. 1987) ..................................................................................... 10


Federal Statutes

15 U.S.C. § 1114(l) ..................................................................................................................... 11
15 U.S.C. § 1117...................................................................................................................... 18, 19
15 U.S.C. § 1118........................................................................................................................... 18
15 U.S.C. § 1121(a) ....................................................................................................................... 5
15 U.S.C. § 1125(a) ...................................................................................................................... 12
28 U.S.C. § 1331, 1332(a)(1), 1338(a)-(b) ................................................................................... 5
28 U.S.C. § 1367(a) ....................................................................................................................... 5
28 U.S.C. § 1391............................................................................................................................ 5
50 U.S.C. § 3931............................................................................................................................ 9
Tex. Bus. & Com. Code Ann. § 16.103 (West) ........................................................................... 15


Rules

Fed. R. Civ. P. 12(a)(1)(A)(i) ....................................................................................................... 8
Fed. R. Civ. P. 4.......................................................................................................................... 4, 8
Fed. R. Civ. P. 55(b) ........................................................................................................... 4, 8, 9, 10
Fed. R. Civ. P. 8(b)(6)................................................................................................................... 10

TO THE HONORABLE COURT:

Plaintiff, Spaghetti Warehouse Restaurants, Inc. ("Spaghetti Warehouse" or "Plaintiff"), seeks a default judgment against Defendant, Spaghetti Warehouse Restaurant of CNY, LLC ("Defendant"), under Fed. R. Civ. P. 55(b) because Defendant has failed to plead or otherwise defend in this action, despite being properly served Plaintiff's Complaint for Preliminary and Permanent Injunctive Relief, Damages, and Other Relief (Doc. 1, filed on October 7, 2025, and served on October 27, 2025, in accordance with Fed. R. Civ. P. 4 (Doc. 8, filed on November 12, 2025). On December 5, 2025, the Clerk of the Court entered a default against Defendant. (Doc. 12).

## INTRODUCTION

1. Plaintiff filed this action asserting claims for trademark infringement under the Lanham Act and Texas law, unfair competition, dilution, and breach of contract based on Defendant's post-termination use of Plaintiff's licensed intellectual property and failure to perform obligations under a written License Agreement. Defendant was provided with written notice of default and later written notice of termination of the License Agreement and cease and desist but failed to cure. Defendant received notice of this Courts Default notice. Defendant continues to use Plaintiff's marks and other licensed property without authorization.

2. Plaintiff respectfully requests entry of default judgment granting injunctive and monetary relief consistent with the Complaint.

## BACKGROUND AND PROCEDURAL HISTORY

3. Plaintiff is a Texas corporation with its principal place of business in Dallas, Texas.

4.      Defendant is a New York limited liability company with its principal place of business in Rye, New York.

5.      This action arises under the Lanham Act and related statutes; the Court has subject-matter jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, 1332(a)(1), 1338(a)-(b), and supplemental jurisdiction under 28 U.S.C. § 1367(a).

6.      Venue and personal jurisdiction are proper under 28 U.S.C. § 1391.

7.      On December 11, 2018, the parties entered a License Agreement under which Plaintiff granted Defendant a non-exclusive license to use Plaintiff's intellectual property and marks at the licensed restaurant location. Appx. 20, *Section 1.1 of the License, titled "Grant."*

8.      Defendant agreed to pay a license fee equal to one percent (1%) of monthly revenues, payable within sixty (60) days following the end of each calendar year, and to pay a $5,000.00 renewal fee for each renewal term. Appx. 21, *Section 1.5 of the License, titled "Fee."*

9.      The Agreement provides for termination upon an Event of Default after written notice and a failure to cure, with all rights to the marks ceasing upon termination, and for prevailing-party recovery of attorneys' fees. Appx. 22, *Section 5.3.1 to 5.3.5 of the License, titled "Termination."*

10.     Defendant has breached the Agreement by failing to pay the required fees for 2023, 2024, and 2025.

11.     Plaintiff issued a written Notice of Default regarding Defendant's failure to pay the 2023 License Fee on October 7, 2024. Appx. 27.

12.     Defendant failed to cure. On June 23, 2025, Plaintiff issued a written Notice of Termination of the License Agreement and demanded that Defendant cease all use of Plaintiff's marks and other licensed property. Appx. 28 – 33.

13.     Following termination, Defendant had no rights to continue using "Spaghetti Warehouse" or the www.meatballs.com domain as well as Plaintiff's licensed property and marks in connection with its restaurant, causing confusion and irreparable harm to Plaintiff's goodwill. Appx. 43 – 48.

14.     Defendant has failed to pay License Fees for calendar years 2023, 2024, and the period January 1, 2025, through June 23, 2025 (the date of termination). The License Agreement requires Defendant to pay a license fee equal to one percent (1%) of monthly revenues. Based on Defendant's revenue history and operations during this period, the unpaid license fees are estimated at $45,000. Id.

15.     Defendant has also failed to pay annual license renewal fees of $5,000 per year for 2023, 2024, and 2025, totaling $15,000 in unpaid renewal fees. Id.

16.     After the termination of the License Agreement on June 23, 2025, Defendant continued unauthorized use of Plaintiff's trademarks, intellectual property, and licensed materials during November and December 2025, causing additional damages to Plaintiff estimated at $10,000. Id.; Appx. 49 – 60.

17.     After the termination of the License, Defendant issued gift cards bearing Plaintiff's Spaghetti Warehouse marks and branding, failed to honor those gift cards, and directed customers to contact Plaintiff for refunds. Plaintiff was forced to inform these customers that it did not own or operate Defendant's location and that only Defendant was responsible for refunds. This conduct fraudulently misrepresented the relationship between Plaintiff and Defendant, resulting in a financial gain to Defendant and intentionally damaging Plaintiff's brand and reputation. Appx. 43 – 48.

18.    Defendant issued a public press release, using Plaintiff's trademark, to promote the restaurant during the seasonally high revenue periods and announcing its closure after a final New Year's Eve, intending to capitalize on the goodwill and loyalty of Plaintiff's brand. Defendant continues operating at the same location under a new business name, Click Stream Studios (a digital content marketing company), and markets its new business while continuing to use Plaintiff's trademarks and goodwill.  Defendant blatantly used Plaintiff's trademarks, knowing they were in violation of the License Agreement, to extract profits for itself. Appx. 49 – 60.

19.    Defendant only relinquished use of the license related to the restaurant after exhausting its value for Defendant's own commercial benefit, despite having actual knowledge of its obligations under the License Agreement and applicable trademark law.  Defendant continues to promote its new business by using the Spaghetti Warehouse goodwill and loyalty of Plaintiff's Brand. Appx. 43 – 48.

20.    The owners and operators of Defendant's restaurant are attorneys, Anthony Schlur and Patrick Dussol, who knew or should have known they were violating the License Agreement and trademark law through their continued unauthorized use of Plaintiff's intellectual property.

21.    Defendant is required to provide Plaintiff with a sworn accounting and attestation as to the accuracy of revenue reported in its financial statements for calendar years 2023, 2024, and 2025 to permit calculation of the precise license fees owed under the License Agreement. Appx. 20 -26.

22.    To the extent the renewal fees and license fees calculated based on Defendant's sworn financial statements exceed the amounts estimated herein, Defendant shall pay the difference. To the extent any overpayment is shown, no adjustment or credit shall be made due to Defendant's failure to timely pay as required by the License Agreement and Defendant's

intentional unauthorized use of Plaintiff's trademarks and intellectual property following termination of the License Agreement.

23.     Plaintiff has complied with its own obligations under the License Agreement.

24.     On October 7, 2025, Plaintiff filed its Complaint for Permanent and Injunctive Relief, Damages, and Other Relief. (Doc. 1) Appx. 1 – 16.

25.     On October 8, 2025, the Court issued a Summons as to Defendant, Spaghetti Warehouse Restaurant of CNY, LLC. (Doc. 6).

26.     On October 27, 2025, in accordance with the Fed. R. Civ. P. 4, Defendant was served, and the Return of Service was filed on November 12, 2025. (Doc. 8).

27.     Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant was required to file an answer or other responsive pleading within 21 days after being served. Because service was affected on October 27, 2025, Defendant's answer or other responsive pleading was due on or before November 17, 2025.

28.     On December 5, 2025, the Clerk of the Court entered a default against Defendant. (Doc. 12).

29.     To date, Defendant has failed to file an answer or other responsive pleading within the time required by Fed. R. Civ. P. 12(a)(1)(A)(i).

### LEGAL STANDARD FOR DEFAULT JUDGMENT

30.     Fed. R. Civ. P. 55(b) provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. Upon entry of default, the well-pleaded factual allegations of the complaint, except those relating to the amount of damages, are taken as true.

31.    Upon default, the well-pleaded allegations of the complaint except those relating to damages are deemed admitted. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir. 1975).

32.    The decision to enter a default judgment lies within the district court's discretion, guided by whether (1) the default was willful; (2) the plaintiff would suffer prejudice absent judgment; and (3) the defendant has no meritorious defense. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

33.    Defendant is not a minor or an incompetent person. A declaration attesting that Defendant is not currently in military service pursuant to the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3931, is attached hereto.

### ENTITLEMENT TO JUDGMENT AND PERMANENT INJUNCTION

34.    Plaintiff moves this court for entry of a default judgment and permanent injunction against Defendant under Fed. R. Civ. P. 55(b). Plaintiff requests that the judgment be entered as further set forth in the attached proposed default judgment.

35.    Defendant has not appeared in this action and is not entitled to notice of this application for entry of a default judgment.

36.    Defendant's failure to respond warrants entry of default judgment for Plaintiff.

37.    Plaintiff's claims are supported by the well-pleaded allegations in the Complaint, which are deemed admitted upon default.

38.    Plaintiff is prejudiced by Defendant's refusal to participate in the litigation, as Plaintiff is unable to obtain relief absent a judgment.

39.    There is no indication that Defendant possesses any meritorious defenses.

40.     Accordingly, a default judgment is warranted. *See U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, nc., (5th Cir. 1987) (default judgment appropriate where defendant fails to defend and plaintiff's claims are supported).

## LIABILITY ON WELL-PLEADED ALLEGATIONS

41.     Upon the entry of default, all well-pleaded factual allegations of the complaint, except those relating to the amount of damages, are taken as true. Plaintiff's Complaint [Doc. 1] alleges facts sufficient to establish Defendant's liability on Plaintiff's causes of action.

42.     The Court may render default judgment against a party who has not timely filed a responsive pleading or otherwise defended the suit. Fed. R. Civ. P. 55(b)(2). The Court should enter a default judgment against Defendant because it has failed to timely answer or otherwise defend himself in this case. Moreover, Defendant is not an infant, incompetent person, or a military service member. Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931(b)(1)(A).

43.     Under Fed. R. Civ. P. 55, entry of default is a two-step process: (1) the entry of default and (2) the subsequent entry of a default judgment. *Eisenhour v. Stafford*, No. 9:12-CV-62, 2013 WL 6212725, at *1 (E.D. Tex. Nov. 26, 2013)(internal citations omitted). After the Clerk enters default, the plaintiff must apply to the court for a default judgment where the amount of damages is not certain. *Id.* *5.

44.     "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6); *See also Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact…"). Accordingly, by default, Defendant admits the allegations in Plaintiff's Complaint. Plaintiff hereby incorporates all of its factual allegations set

forth in its Complaint, and seeks judgment by default on its claims against Defendant as set forth below.

45.    By its default, Defendant has admitted to the facts underlying the following claims:

## COUNT I – LANHAM ACT - TRADEMARK INFRINGEMENT

46.    Plaintiff repeats and realleges the foregoing paragraphs of its Motion for Default Judgment as if fully set forth herein.

47.    Defendant's acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Marks, and Defendant's sale, offering for sale, distribution or advertising of goods and services under the Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

48.    As a direct and proximate result of Defendant's infringement, Plaintiff has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

49.    Plaintiff has no adequate remedy at law because the Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate for Defendant's misconduct.

50.    Unless enjoined by the Court, Defendant and those acting in concert with them will continue to use and infringe the Marks, to Plaintiff's irreparable injury.

51.    This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the Marks, and to ameliorate and mitigate Plaintiff's injuries.

## COUNT II – LANHAM ACT - UNFAIR COMPETITION

52.    Plaintiff repeats and realleges the foregoing paragraphs of its Motion for Default Judgment as if fully set forth herein.

53.    Defendant's acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

54.    As a direct and proximate result of Defendant's unfair competition, Plaintiff has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

55.    Plaintiff has no adequate remedy at law because the Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendant's misconduct.

56.    Unless enjoined by the Court, Defendant and those acting in concert with them will continue to compete unfairly with Plaintiff, to Plaintiff's irreparable injury. This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued unfair competition and to ameliorate and mitigate Plaintiff's injuries.

57.    Defendant's use of Plaintiffs Marks in commerce after Termination was not a random or accidental use.  Defendants' press releases document Defendant's intentional use of Plaintiff's Trademark in the marketplace.

## COUNT III– BREACH OF CONTRACT

58.     Plaintiff repeats and realleges the foregoing paragraphs of its Motion for Default Judgment as if fully set forth herein.

59.     Defendant has failed and refused to perform its obligations under the License Agreement, including its obligations (i) to pay all amounts owed to Spaghetti Warehouse, (ii) to cease using the Licensed Property (iii) to surrender to Spaghetti Warehouse all materials bearing any of the Marks, and (iv) to discontinue all use of Spaghetti Warehouse's confidential and proprietary information.

60.     Unless and until Defendant is ordered to perform its post-termination obligations under the License Agreement, Plaintiff is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill, for which Plaintiff has no adequate remedy at law.

61.     This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires that Defendant be ordered to perform its contractual post-termination obligations under the License Agreement to prevent Defendant's continued breach and to ameliorate and mitigate Plaintiff's injuries.

62.     In addition to the injuries inflicted to Plaintiff's business identity, goodwill, and reputation, Plaintiff continues to be damaged in an amount equal to all outstanding monies owed under the License Agreement.

63.     Also, the License Agreement provides that in the event of any default on the part of either party, the party in default will pay the prevailing party, among other things, all reasonable attorneys' fees incurred by the prevailing party in any legal action or other proceeding as a result of such default.

64.     Defendant breached and failed to perform in accordance with the License and other agreements, and said breach has caused Plaintiff to incur damages, including but not limited to attorneys' fees.

## COUNT IV – COMMON-LAW TRADEMARK INFRINGEMENT, COMMON-LAW AND STATUTORY UNFAIR COMPETITION

65.     Plaintiff repeats and realleges the foregoing paragraphs of its Motion for Default Judgment as if fully set forth herein.

66.     As a result of the public's association of the Spaghetti Warehouse marks with Plaintiff, Defendant's use and sale of deceptively similar products in connection with its restaurant is likely to cause confusion, mistake, and to deceive.

67.     Defendant has continued using Plaintiff's Marks with full prior knowledge of Plaintiff's rights to them and of the reputation of the Spaghetti Warehouse trademarks.

68.     Defendant's sale and use of the Marks were for the willful and calculated purpose of trading on Plaintiff's goodwill; further, Defendant have willfully promoted the restaurants in such a manner so as inevitably to suggest an association, affiliation, or sponsorship with, or approval by, Plaintiff and to cause, or be likely to cause, confusion, or mistake among purchasers as to the origin of Defendant's products, all to Defendant's gain and Plaintiff's damage.

69.     The conduct of Defendant violates and constitutes an infringement of Plaintiff's common-law rights in the Marks and constitutes improper and unfair competition with Plaintiff under the laws of the State of Texas.

70.     Defendant's conduct has damaged and will continue to damage Plaintiff's goodwill and reputation and will further cause irreparable injury unless restrained by this Court.

71.     To stop Defendant's continued unauthorized use of the Marks, Plaintiff has no adequate remedy at law.

## COUNT V – TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION

72.     Plaintiff repeats and realleges the foregoing paragraphs of its Motion for Default Judgment as if fully set forth herein.

73.     Defendant's conduct will cause a likelihood of dilution of the distinctive and valuable quality of Plaintiff's trademarks and a likelihood of injury to Plaintiff's business reputation in violation of the laws of the State of Texas, particularly Tex. Bus. & Com. Code Ann. § 16.103 (West), unless enjoined by this Court.

74.     Plaintiff has no adequate remedy at law.

## SPECIFIC DAMAGES

75.     Remedies for infringement: Costs and attorney's fees. In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C.A. § 505.

76.     Recovery for violation of rights (Lanham Act). (a) Profits; damages and costs; attorney fees. When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

77.     The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales

only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

78.    (b) Treble damages for use of counterfeit mark. In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title or section 220506 of Title 36, in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of--(1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or (2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

79.    In such a case, the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

80.    (c) Statutory damages for use of counterfeit marks. In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

81.    (d) Statutory damages for violation of section 1125(d)(1). In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

82.    (e) Rebuttable presumption of willful violation. In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section. 15 U.S.C.A. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief against Defendant:

1.     A preliminary and permanent injunction enjoining Defendant, its agents, servants, and employees, and those people in active concert or participation with them, from:

   a. Using the Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the Marks.

   b. Otherwise infringing on the Marks or using any similar designation, alone or in combination with any other components.

   c. Passing off any of its products or services like those of Spaghetti Warehouse or its authorized licensee.

   d. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of its businesses, products, or services.

   e. Causing a likelihood of confusion or misunderstanding as to its affiliation, connection, or association with Spaghetti Warehouse and its franchisees or any of Spaghetti Warehouse's products or services.

   f. Unfairly competing with Spaghetti Warehouse or its affiliates in any manner.

2.     An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in possession of Defendant, its affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them bearing the Marks, and all plates, molds, and other means of making the same, if any, be delivered to Spaghetti Warehouse at Defendant's cost;

3.     An order that Defendant be required to promptly eliminate its advertising under the Marks or any other confusingly similar designations from all media, including, but not limited to, websites, emails, newspapers, flyers, coupons, promotions, signs, menus, telephone books, telephone directory assistance listings, and mass mailings, all at Defendant's cost.

4.     An order that Defendant be required to file with the Court and to serve upon Plaintiff's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order.

5.     An order that Defendant account and pay over to Plaintiff all gains, profits, and advantages derived by them as a result of its infringement of the Marks, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law.

6.      An order that Defendant pay to Plaintiffs such damages as Plaintiffs have sustained by reason of said trademark infringement, breach of contract, business dilution, and unfair competition and that, because of the willful nature of the said infringement, the Court enter judgment for Plaintiff for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

7.      An award of damages as follows:

   a.   All back license fees owed for calendar years 2023, 2024, and the period January 1, 2025, through June 23, 2025 (date of termination), calculated as one percent (1%) of Defendant's revenues for said periods, estimated at $45,000.00, subject to adjustment based on Defendant's sworn accounting.

   b.   All back license renewal fees of $5,000 per year for 2023, 2024, and 2025, totaling $15,000.

   c.   All Defendant's gains from the deliberate continued use of Plaintiff's Marks from and after June 23, 2025, Defendant's receipt of Termination and Cease and Desist.

   d.   Disgorgement to Plaintiff of Defendants ill-gotten gains from the deliberate and intentional plan of unauthorized use of Plaintiff's trademarks and licensed property during November through January 1, 2026, estimated at $250,000.00.

8.      An order for the full and accurate accounting of the sale of Gift Cards bearing the Mark or its name.

9.      Disgorgement to Plaintiff of all funds received by Defendant from Defendant's sale of Gift Cards bearing the Marks name. Estimated to be

10.     An order requiring Defendant to provide sworn accounting and attestation as to the accuracy of Defendant's financial statements for calendar years 2023, 2024, and 2025, including all revenue figures used to calculate license fees owed under the License Agreement.

11.     An order providing that if the license fees and renewal fees calculated based on Defendant's sworn financial statements exceed the estimated amounts set forth above, Defendant shall pay the difference to Plaintiff.

12.     An order providing that if the license fees calculated based on Defendant's sworn financial statements result in any overpayment by Defendant, no credit or adjustment shall be made due to Defendant's failure to timely pay amounts owed under the License Agreement and Defendant's intentional unauthorized use of Plaintiff's trademarks and intellectual property following termination of the License Agreement.

13.     All reasonable attorneys' fees and costs incurred by Plaintiff in connection with this action as provided for by the License Agreement and applicable law.

14.     All court costs incurred by Plaintiff in this action.

15.     An Order requiring Defendant to immediately perform its contractual post-termination obligations under the License Agreement, including, without limitation, its obligations.

16.     An Order to take any and all necessary steps to cancel and/or transfer to Spaghetti Warehouse any telephone numbers associated with Spaghetti Warehouse or the Marks used in connection with the operation of Defendant's former Spaghetti Warehouse restaurants.

17.     An Order to return to Spaghetti Warehouse all operating manuals and other materials provided to Defendant in connection with the operation of its former Spaghetti Warehouse restaurants, and all materials bearing any of the Marks.

18.     An award of the costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in connection with this action as provided for by statute and the parties' License Agreement, and

19.     Such other and further relief as the Court deems just and proper.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court grant this Motion for Default Judgment and enter judgment against Defendant for the relief requested herein, including economic and compensatory damages in the amount set forth herein, subject to adjustment based on Defendant's sworn accounting, pre-judgment and post-judgment interest, costs of court, a hearing to determine the amount of exemplary damages, and such other and further relief as the Court may deem just and proper.

DATED March 13, 2026.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:_____
   CASEY S. ERICK
   TX State Bar No. 24028564
   Kyndall E. Richardson
   TX State Bar No. 24149343
   2100 Ross Avenue, Suite 2000
   Dallas, Texas 75201
   Telephone: (214) 722-7107
   Fax: (214) 722-7111
   Casey.Erick@lewisbrisbois.com
   Kyndall.Richardson@lewisbrisbois.com

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on the 13th day of March 2026, the foregoing document was served electronically with a copy of the pleading through use of the Court's CM/ECF system and/or mailing it to the last known address of counsel and or parties, if any.

_____
CASEY S. ERICK