UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPAGHETTI WAREHOUSE §
RESTAURANTS, INC. §
§
     Plaintiff, §
§
v. § CIVIL ACTION NO. 3:25-cv-02727-E
§
SPAGHETTI WAREHOUSE § JURY DEMANDED
RESTAURANT OF CNY, LLC, §
§
     Defendant. §

**APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC AND BRIEF IN SUPPORT**

1.  Complaint for Preliminary and Permanent Injunctive Relief, Damages and Other Relief — **Appx. 1 – 16.**
2.  Unsworn Declaration in Support of Motion for Temporary
3.  Restraining Order — **Appx. 17 – 19.**
4.  Exhibit A – License Agreement — **Appx. 20 – 26.**
5.  Exhibit B – October 7, 2024, Notice of Default Letter to Defendant — **Appx. 27.**
6.  Exhibit C – June 23, 2025, Notice of Termination of License Agreement — **Appx. 28 – 33.**
7.  Declaration of Doug Pak in Support of Plaintiff's Motion for Default Judgment — **Appx. 43 – 48.**
8.  Press Releases - NY Restaurant Closing and Click Streams Opening — **Appx. 49 – 60.**
9.  Declaration of Casey S. Erick — **Appx. 61 – 80.**

DATED March 13, 2026.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
CASEY S. ERICK
TX State Bar No. 24028564
Kyndall E. Richardson
TX State Bar No. 24149343
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 722-7107
Fax: (214) 722-7111
Casey.Erick@lewisbrisbois.com
Kyndall.Richardson@lewisbrisbois.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 13th day of March 2026, the foregoing document was served electronically with a copy of the pleading through use of the Court's CM/ECF system and/or mailing it to the last known address of counsel and or parties, if any.

_____
CASEY S. ERICK

**APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC AND MEMORANDUM IN SUPPORT** – **PAGE 2**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SPAGHETTI WAREHOUSE RESTAURANTS, INC.<br><br>**Plaintiff**<br><br>v.<br><br>SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC,<br><br>**Defendant** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 3:25-cv-02727 v**<br><br>**JURY DEMANDED** |

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF

Plaintiff, Spaghetti Warehouse Restaurants, Inc. ("Spaghetti Warehouse" or "Plaintiff") brings this Complaint for Preliminary and Permanent Injunctive Relief, Damages, and Other Relief ("Complaint") against Spaghetti Warehouse Restaurant of CNY, LLC ("Defendant"), states as follows:

### NATURE OF ACTION

1. This is an action for trademark infringement under the United States and Texas trademark laws, for unfair competition, business dilution, and breach of contract. Plaintiff seeks, among other things, a preliminary and permanent injunction (i) enjoining Defendant and those acting in concert with them from wrongful and unlawful use of Spaghetti Warehouse's federally registered trademarks, and (ii) enforcing Defendant's post-termination obligations set forth in the License Agreement entered into by and between Defendant and Spaghetti Warehouse. Plaintiff further seeks its damages, including amounts owed for past due licensing fees, future lost royalties, as well as attorneys' fees and costs of court.

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 1**
1659701.1

<span style="color:red">APPENDIX 000001</span>

**PARTIES**

2.      Plaintiff, Spaghetti Warehouse Restaurants, Inc., is a corporation organized and existing under the laws of the State of Texas with its principal place of business located in Dallas, Texas, and its principal office located at 1815 N. Market St., Dallas, Texas 75202.

3.      Defendant, Spaghetti Warehouse Restaurant of CNY, LLC, is a company organized and existing under the laws of the State of New York with its principal place of business located in Rye, New York.  Defendant can be served by serving its registered agent for service of process, Kathleen Northrop, Registered agent, at 411 Theodore Fremd Avenue, Suite 206, Rye, New York, 10580

**JURISDICTION AND VENUE**

4.      The action asserts a claim for a violation of federally-registered trademarks, including a claim under 15 USC §§ 1116, 1117, and this court has jurisdiction of this claim under 15 USC § 1121(a), 28 USC § 1338(a), and jurisdiction over all related unfair competition claims under 28 USC § 1338(b).

5.      All other claims asserted in this action arise out of the same transaction or occurrence so that this court has supplemental jurisdiction over all additional claims asserted in this action under 28 USC § 1367(a).

6.      This Court also has original subject matter jurisdiction over this action under 28 USC § 1331, in that this is a civil action arising under the Constitution, laws, or treaties of the United States. The Court also has jurisdiction under 28 USC § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

APPENDIX 000002

7.      Personal jurisdiction and venue are proper in this Court under 28 USC §1391. A substantial part of the events and omissions giving rise to the claims asserted herein occurred in this district, and the Defendant have sufficient contact with this district.

## **FACTUAL BACKGROUND[1]**

8.      Spaghetti Warehouse is a well-known Italian restaurant chain geared towards families with five locations in two U.S. states: four in Ohio and one in New York. The chain started in 1972 in Dallas, Texas, and at one point had spread throughout the southern and eastern parts of the United States. Spaghetti Warehouse's unique characteristic is that many of its older locations are situated in renovated, historic buildings.

9.      Spaghetti Warehouse has developed a brand using the name "Spaghetti Warehouse" (the "Brand"), including the registered trademarks (the "Marks"), a restaurant/food service concept and system, proprietary materials and methods, know-how, trade secrets, recipes, menus, trade dress, logos, domain names (including www.meatballs.com), and other intellectual property (the "Intellectual Property").

10.      The Marks, Brand, and Intellectual Property (collectively the "Licensed Property") distinguish Spaghetti Warehouse restaurants and products from those established, made, offered, and sold by others.

11.      The Marks are registered on the Principal Register of the United States Patent and Trademark Office. The Marks' registrations continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 USC § 1065.

---

[1] *Plaintiff incorporates the Unsworn Declaration of Mr. Doug Pak, CEO of Spaghetti Warehouse Restaurants, Inc., herein in its entirety.*
**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 3**
1659701.1

APPENDIX 000003

12.     Spaghetti Warehouse has given notice to the public of the registration of the Marks as provided in 15 USC §1111. It complies with all legal requirements to ensure Spaghetti Warehouse and its authorized licenses remain the Marks' exclusive users and licensors.

13.     Spaghetti Warehouse and its licensees have continuously used the Marks in interstate commerce in connection with (i) the promotion, sale, and franchising of Spaghetti Warehouse Restaurants and (ii) the promotion and sale of the products and services Spaghetti Warehouse offers throughout the United States, including the State of Texas, since the date of its registration.

14.     Plaintiff has the right to use and license the Marks and derivations thereof and the distinctive Brand and Intellectual Property with which licensees offer Spaghetti Warehouse's products to the public under the Marks.

15.     Under the License Agreement ("License") entered into by and between Spaghetti Warehouse and authorized Licensees, Spaghetti Warehouse grants Licensees a non-exclusive right and license to use the Marks in connection with the operation of a restaurant in a manner and at such locations as are expressly authorized by the license.

16.     Spaghetti Warehouse uses the Marks as the marks and trade identity by which the products and services offered by Spaghetti Warehouse are distinguished from other restaurants, and the products and services made and sold by them.

17.     Spaghetti Warehouse has extensively advertised and promoted Spaghetti Warehouse restaurants and the products and services under the Marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products offered by Spaghetti Warehouse under the Marks have met with widespread public approval. They have established a steady demand and goodwill among consumers throughout the United States, including the State of Texas.

APPENDIX 000004

**Defendant Acquires a License to Use the Marks Subject to the License Agreement**

18.    Spaghetti Warehouse Restaurants, Inc. and Spaghetti Warehouse Restaurant of CNY, LLC (CNY) are parties to a written License Agreement, dated December 11, 2018, wherein Spaghetti Warehouse licensed the use of the Marks at Defendant's restaurant.[2]

19.    The Defendant is owned and operated by New York Attorney, Anthony J. Schlur, Esq., of the law firm, Goldberg Weprin Finkel Goldstein, LLP, located at 1501 Broadway, 22nd Floor, New York, New York 10036, and by Connecticut Attorney, Patrick J. Dussol, Esq., Assistant General Counsel - Real Estate at Hut 8 Corp., located at 1101 Brickell Ave, N-1500, Miami, FL 33131.

20.    In executing the License Agreement, Defendant expressly acknowledged that "subject to the terms and conditions outlined in this Agreement, Licensor [Spaghetti Warehouse] grants to Licensee the non-exclusive right and license to use the Intellectual Property in connection with the operation of the Restaurant at the Location.[3]

21.    The License provided, in pertinent part, that the Defendant is required to pay a License Fee equal to 1% of the Licensee revenues at the Restaurant for each month (the "License Fee") sixty (60) days following the end of the calendar year, and $5,000.00 for each Renewal Term due on the first day of the Renewal Term.[4]

22.    The License gives Spaghetti Warehouse the right to terminate the License in the "Event of Default." One of the Events of Default is failing to pay the obligations after being given

---

[2] *See Exhibit A – License Agreement.*
[3] *See Exhibit A, Section 1.1 of the License, titled "Grant."*
[4] *See Exhibit A, Section 1.5 of the License, titled "Fee."*

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 5**
1659701.1

APPENDIX 000005

written notice with a failure to cure within thirty (30) days of receipt of such notice.[5] The right to terminate is cumulative to any other right Spaghetti Warehouse may have at law or in equity.[6]

23.     Defendant acknowledged that the Licensed Property, all materials, methods, and systems relating to it, are proprietary and Spaghetti Warehouse's sole property. Defendant agreed that they have no rights in or to such materials, that they will not acquire any rights in such materials as a result of the License, and that they may not use such materials without the consent of Spaghetti Warehouse.[7]

24.     Defendant also agreed that they would not, either during the term of the License or after, (a) disclose, reveal, divulge, furnish, disseminate or deliver ("Disclose") any Licensed Property designated as confidential, (b) use, utilize, employ, publish, rewrite, reproduce ("Use") any Licensed Property, or (c) authorize or permit any third person or entity to Disclose or Use any Confidential Information.[8]

25.     Along with its monetary obligations, Defendant agreed to maintain and operate its Spaghetti Warehouse location in strict compliance with the License, including its agreement to not use or permit the Licensed Property to be used: (a) in any manner that would tend to injury, demean or dilute the reputation or value of Spaghetti Warehouse, the Marks or the goodwill symbolized by the Intellectual Property.  Furthermore, the Defendant may use the Marks only in a manner authorized and permitted by Spaghetti Warehouse.[9]

---

[5] *See Exhibit A, Section 5.3.1 to 5.3.5 of the License, titled "Termination."*
[6] *See Exhibit A, Section 5.4 of the License, titled "Remedies Cumulative."*
[7] *See Exhibit A, Section 6.1 of the License, titled "Acknowledgement of Rights."*
[8] *See Exhibit A, Section 6.3 of the License, titled "Confidentiality."*
[9] *See Exhibit A, Sections 1.2 to 1.2.3 of the License, titled "Use of Licensed Property."*

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 6**
1659701.1

APPENDIX 000006

26. Upon the occurrence of any Event of Default, Spaghetti Warehouse may, at its option, terminate the License, and all of the Defendant's rights under the License shall terminate immediately upon the date that Spaghetti Warehouse gives written notice of termination.[10]

27. Upon termination of the License, Defendant has no rights to the name or marks related to "Spaghetti Warehouse" or www.meatballs.com, unless otherwise agreed by Spaghetti Warehouse.[11]

28. In the event of any litigation regarding the License, the parties agreed that the prevailing party should recover all reasonable costs and expenses, including attorneys' fees.[12] And that any damages arising from the breach of the License may be extensive and cause immediate and irreparable harm to Spaghetti Warehouse, and that injunctive relief may be appropriate.[13]

29. Defendant fell behind and failed to make any License Fee payments and payments due in connection with the License Agreement.

30. Spaghetti Warehouse contacted Defendant requesting payments owed under the License and the Notes on numerous occasions. The demands were more or less ignored.

31. It must be noted that Defendant is owned and operated by New York attorneys, and their continued use of the Trademark, after notice, is not by accident. Their violations of trademark law and the License Agreement are done knowingly, intentionally, and with a clear understanding of the harm caused to Plaintiff.

32. Spaghetti Warehouse sent a formal Notice of Default dated October 7, 2024, providing notice to Defendant that they were in default for the failure to pay said fees.[14]

---

[10] *See Exhibit A, Section 5.3 of the License, titled "Termination."*
[11] *See Exhibit A, Section 5.5 of the License, titled "Use after Termination/Expiration."*
[12] *See Exhibit A, Section 7.4 of the License, titled "Attorneys' Fees."*
[13] *See Exhibit A, Section 7.5 of the License, titled "Injunctive Relief."*
[14] *See Exhibit B, October 7, 2024, Notice of default letter to Defendant.*

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 7**

1659701.1

APPENDIX 000007

33.     Spaghetti Warehouse sent a formal Notice of Termination of License Agreement dated June 23, 2025.[15]

34.     Defendant failed to cure the default. Defendant has not made any payments or attempted to pay any of the amounts owed as of this filing.

35.     In accordance with the termination of the License, Defendant was to stop using all Marks or other Licensed Property immediately. This includes removing all signs, advertisements, and promotional materials

36.     Because the License has been terminated, Defendant lost all rights to the Licensed Property and Marks related to "Spaghetti Warehouse," including but not limited to, the www.meatballs.com website.

37.     Defendant has breached the License Agreement by failing to provide financial statements for 2023, 2024, and 2025. Plaintiff estimates that past license fees accrued prior to termination to be not less than $25,000.00 to $30,000.00.

38.     Defendant's breach of the License gives rise to Spaghetti Warehouse's claims and damages herein.

39.     Notwithstanding the termination of the License, Defendant and its agents continue to use the Licensed Property in the operation of its restaurants and continue to market and promote its restaurants using the Licensed Property.

40.     Defendant's use of the Licensed Property and sale of purported Spaghetti Warehouse products is without the license or consent of Spaghetti Warehouse, and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

---

[15] *See Exhibit C, June 23, 2025, Notice of Termination of License Agreement.*

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 8**
1659701.1

APPENDIX 000008

41.     In addition to the fact that Defendant offers similar products to products offered by Spaghetti Warehouse and continues to use Spaghetti Warehouse's name at its restaurant, the products provided by Defendant using the Licensed Property are offered to the same class of consumers as those who patronize authorized Spaghetti Warehouse restaurants.

42.     Upon seeing the familiar trademarks and other Licensed Property through Defendant's unauthorized use thereof, consumers will be deceived into concluding that Defendant's restaurants, and the products and services offered and sold in connection therewith, are subject to Spaghetti Warehouse's supervision, are sponsored or endorsed by Spaghetti Warehouse, and bear the marks pursuant to Spaghetti Warehouse's authority and permission.

43.     So long as Defendant and its agents continue to use the Licensed Property in connection with its restaurant's operation, consumers have no practical way of knowing that Defendant's former Spaghetti Warehouse is no longer affiliated with, sponsored, authorized, or endorsed by Spaghetti Warehouse. As a result, any consumer dissatisfaction with Defendant's restaurant, or with the products and services offered in connection therewith, will be attributed to Spaghetti Warehouse and the entire Spaghetti Warehouse network.

44.     Defendant has received actual notice of its violation and infringement of the Licensed Property and has constructive notice of Spaghetti Warehouse's rights in the trademarks and the registrations thereof pursuant to 15 USC § 1072.

45.     Defendant's continued infringement is willful, malicious, fraudulent, and deliberate.

46.     Spaghetti Warehouse has at all times complied with and fully performed all of its obligations under the License Agreement.

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 9**
1659701.1

APPENDIX 000009

## COUNT I

## LANHAM ACT - TRADEMARK INFRINGEMENT

47.     Plaintiff repeats and realleges ¶¶ 1 through 44 of its Complaint as if fully set forth herein.

48.     Defendant's acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Marks, and Defendant's sale, offering for sale, distribution or advertising of goods and services under the Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 USC § 1114(l).

49.     As a direct and proximate result of Defendant's infringement, Plaintiff has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

50.     Plaintiff has no adequate remedy at law because the Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate for Defendant's misconduct.

51.     Unless enjoined by the Court, Defendant and those acting in concert with them will continue to use and infringe the Marks, to Plaintiff's irreparable injury.

52.     This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the Marks, and to ameliorate and mitigate Plaintiff's injuries.

## COUNT II

## LANHAM ACT - UNFAIR COMPETITION

53.     Plaintiff repeats and realleges ¶¶ 1 through 50 of its Complaint as if fully set forth herein.

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 10**
1659701.1

APPENDIX 000010

54. Defendant's acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 USC § 1125(a).

55. As a direct and proximate result of Defendant's unfair competition, Plaintiff has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

56. Plaintiff has no adequate remedy at law because the Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendant's misconduct.

57. Unless enjoined by the Court, Defendant and those acting in concert with them will continue to compete unfairly with Plaintiff, to Plaintiff's irreparable injury. This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued unfair competition and to ameliorate and mitigate Plaintiff's injuries.

## COUNT III

## BREACH OF CONTRACT

58. Plaintiff repeats and realleges ¶¶ 1 through 55 of its Complaint as if fully set forth herein.

59. Defendant has failed and refused to perform its obligations under the License Agreement, including its obligations (i) to pay all amounts owed to Spaghetti Warehouse, (ii) to

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 11**
1659701.1

APPENDIX 000011

cease using the Licensed Property (iii) to surrender to Spaghetti Warehouse all materials bearing any of the Marks, and (iv) to discontinue all use of Spaghetti Warehouse's confidential and proprietary information.

60.    Unless and until Defendant is ordered to perform its post-termination obligations under the License Agreement, Plaintiff is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill, for which Plaintiff has no adequate remedy at law.

61.    This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires that Defendant be ordered to perform its contractual post-termination obligations under the License Agreement to prevent Defendant's continued breach and to ameliorate and mitigate Plaintiff's injuries.

62.    In addition to the injuries inflicted to Plaintiff's business identity, goodwill, and reputation, Plaintiff continues to be damaged in an amount equal to all outstanding monies owed under the License.

63.    Also, the License Agreement provides that in the event of any default on the part of either party, the party in default will pay the prevailing party, among other things, all reasonable attorneys' fees incurred by the prevailing party in any legal action or other proceeding as a result of such default.

64.    Spaghetti Warehouse at all times fully performed all of its obligations under the License Agreement. Defendant breached and failed to perform in accordance with the License and other agreements, and said breach has caused Plaintiff to incur damages, including but not limited to attorneys' fees.

## COUNT IV

### COMMON-LAW TRADEMARK INFRINGEMENT, COMMON-LAW AND STATUTORY UNFAIR COMPETITION

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 12**

1659701.1

APPENDIX 000012

65.     Plaintiff repeats and realleges ¶¶ 1 through 62 of its Complaint as if fully set forth herein.

66.     As a result of the public's association of the Spaghetti Warehouse marks with Plaintiff, Defendant's use and sale of deceptively similar products in connection with its restaurant is likely to cause confusion, mistake, and to deceive.

67.     Defendant has continued using Plaintiffs' Marks with full prior knowledge of Plaintiffs' rights to them and of the reputation of the Spaghetti Warehouse trademarks.

68.     Defendant's sale and use of the Marks were for the willful and calculated purpose of trading on Plaintiffs' goodwill; further, Defendant have willfully promoted the restaurants in such a manner so as inevitably to suggest an association, affiliation, or sponsorship with, or approval by, Plaintiff and to cause, or be likely to cause, confusion, or mistake among purchasers as to the origin of Defendant's products, all to Defendant's gain and Plaintiff's damage.

69.     The conduct of Defendant violates and constitutes an infringement of Plaintiff's common-law rights in the Marks and constitutes improper and unfair competition with Plaintiff under the laws of the State of Texas.

70.     Defendant's conduct has damaged and will continue to damage Plaintiff's goodwill and reputation and will further cause irreparable injury unless restrained by this Court.

71.     Plaintiff has no adequate remedy at law.

## COUNT V

## TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION

72.     Plaintiff repeats and realleges ¶¶ 1 through 69 of its Complaint as if fully set forth herein.

73.     Defendant's conduct will cause a likelihood of dilution of the distinctive and valuable quality of Plaintiff's trademarks and a likelihood of injury to Plaintiff's business

APPENDIX 000013

reputation in violation of the laws of the State of Texas, particularly Section 16.103 of the Texas

Business and Commerce Code, unless enjoined by this Court.

74.     Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

75.     **WHEREFORE,** Plaintiff respectfully prays for the following relief against

Defendant:

a. A preliminary and permanent injunction enjoying Defendant, its agents, servants, and employees, and those people in active concert or participation with them, from:

    i.  Using the Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the Marks;

    ii  Otherwise infringing on the Marks or using any similar designation, alone or in combination with any other components;

    iii. Passing off any of its products or services like those of Spaghetti Warehouse or its authorized licensee;

    iv  Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of its businesses, products, or services;

    v  Causing a likelihood of confusion or misunderstanding as to its affiliation, connection, or association with Spaghetti Warehouse and its franchisees or any of Spaghetti Warehouse's products or services;

    vi  Unfairly competing with Spaghetti Warehouse or its affiliates in any manner;

b. An order pursuant to 15 USC § 1118 that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in possession of Defendant, its affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them bearing the Marks, and all plates, molds, and other means of making the same, if any, be delivered to Spaghetti Warehouse at Defendant's cost;

c. An order that Defendant be required to promptly eliminate its advertising under the Marks or any other confusingly similar designations from all media, including, but not limited to, websites, emails, newspapers, flyers, coupons, promotions, signs, menus, telephone books, telephone directory assistance listings, and mass mailings, all at Defendant's cost;

APPENDIX 000014

d. An order that Defendant be required to file with the Court and to serve upon Plaintiff's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

e. An order that Defendant account and pay over to Plaintiff all gains, profits, and advantages derived by them as a result of its infringement of the Marks, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 USC § 1117, and by the controlling principles of common law;

f. An order that Defendant pay to Plaintiffs such damages as Plaintiffs have sustained by reason of said trademark infringement, breach of contract, business dilution, and unfair competition; and that, because of the willful nature of the said infringement, the Court enter judgment for Plaintiff for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 USC § 1117;

g. An award of damages equal to the past-due amounts owed, the net present value of the License Fees that would have become due had Defendant not defaulted under the License Agreement, and such other damages proven at trial of this matter;

h. An Order requiring Defendant to immediately perform its contractual post-termination obligations under the License Agreement, including, without limitation, its obligations:

i. An Order to take any and all necessary steps to cancel and/or transfer to Spaghetti Warehouse any telephone numbers associated with Spaghetti Warehouse or the Marks used in connection with the operation of Defendant's former Spaghetti Warehouse restaurants; and

j. An Order to return to Spaghetti Warehouse all operating manuals and other materials provided to Defendant in connection with the operation of its former Spaghetti Warehouse restaurants, and all materials bear any of the Marks;

k. An award of the costs and expenses, including reasonable attorney's fees, incurred by Plaintiff in connection with this action as provided for by statute and the parties' License Agreement; and

l. Such other and further relief as the Court deems just and proper.

APPENDIX 000015

Respectfully submitted,

COWLES & THOMPSON, PC

By: _____

Casey S. Erick
Texas Bar No. 24028564
Email:  cerick@cowlesthompson.com
William l. Siegel
Texas Bar No. 18342480
Email: bsiegel@cowlesthompson.com

901 Main Street
Suite 3900
Dallas, Texas 75202
Tel. (214) 672-2138
Fax. (214) 672-2338

ATTORNEYS FOR PLAINTIFF,
SPAGHETTI WAREHOUSE
RESTAURANTS, INC.

APPENDIX 000016

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPAGHETTI WAREHOUSE
RESTAURANTS, INC.

      Plaintiff

v.

SPAGHETTI WAREHOUSE RESTAURANT
OF CNY, LLC,

      Defendant

§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. _____

JURY DEMANDED

## UNSWORN DECLARATION IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

1.      My name is Doug Pak. I am the Chief Executive Officer of Spaghetti Warehouse Restaurants, Inc. I am over the age of eighteen, have never been convicted of a felony, and am otherwise competent to make this Declaration. All statements contained in this Declaration are within my personal knowledge and are true and correct.

2.      I submit this Declaration in support of Plaintiff's request for a temporary restraining order and a preliminary injunction, prohibiting Defendant from using, disclosing, distributing, displaying, selling, or offering for sale Plaintiff's Licensed Property.

3.      I have personal knowledge of the facts and allegations stated in Plaintiff's Complaint for Preliminary and Permanent Injunctive Relief, Damages, and Other Relief (the "Complaint"), which are incorporated herein, in their entirety.

4.      Attached to Plaintiff's Complaint for Preliminary and Permanent Injunctive Relief, Damages, and Other Relief are the following Exhibits.

    a.    Exhibit A – License Agreement.

    b.    Exhibit B – October 7, 2024, Notice of default letter to Defendant.

    c.    Exhibit C – June 23, 2025, Notice of Termination of License Agreement.

5.      I am a custodian of records for Plaintiff. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Plaintiff. All

1659700.1 UNSWORN DECLARATION IN SUPPORT OF COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 1

APPENDIX 000017

of the attached records were made at or near the time of the occurrence of the matters set forth, by, or from information transmitted by a person with knowledge of those matters. Such records were kept in the course of a regularly conducted business activity of Plaintiff, and such records were made by Plaintiff as a regular practice.

6.     I am familiar with Spaghetti Warehouse's Brand, Intellectual Property, and registered Marks and have personal knowledge of the location and operation of Defendant's restaurants.

7.     Spaghetti Warehouse sent the notice above to Defendant consistent with the terms of the License: in writing by certified mail, return receipt requested, and by email.

8.     Defendant failed to cure their default.

9.     Because the License has been terminated, Defendant lost all rights to the Licensed Property and Marks related to "Spaghetti Warehouse," including but not limited to, the www.meatballs.com website.

10.     In accordance with the termination of the License, Defendant was to stop using all Marks or other Licensed Property immediately. This includes removing all signs, advertisements, and promotional materials.

11.     Notwithstanding the termination of the License, Defendant and its agents continue to use the Licensed Property in the operation of their restaurants and continue to market and promote their restaurants using the Licensed Property reputation and goodwill.

12.     Defendant has clearly indicated that it has no intention to comply with the terms of the License Agreement, the termination of said License, or otherwise cease using Spaghetti Warehouse's Licensed Property, reputation, and goodwill.

13.     Defendant is operating their restaurant as a "Spaghette Warehouse" and is openly using the company's Marks.

14.     Defendant's use of the Licensed Property and sale of purported Spaghetti Warehouse products is without the license or consent of Spaghetti Warehouse and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

1659700.1 UNSWORN DECLARATION IN SUPPORT OF COMPLAINT FOR PRELIMINARY AND
PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF – PAGE 2

APPENDIX 000018

15.     The products provided by Defendant are offered to the same class of consumers as those who patronize authorized Spaghetti Warehouse restaurants.

16.     Upon seeing the familiar trademarks and other Licensed Property through Defendant's unauthorized use thereof, consumers will be deceived into concluding that Defendant's restaurants, and the products and services offered and sold in connection therewith, are subject to Spaghetti Warehouse's supervision, are sponsored or endorsed by Spaghetti Warehouse, and bear the marks pursuant to Spaghetti Warehouse's authority and permission.

17.     So long as Defendant and its agents continue to use the Licensed Property in connection with their restaurants' operation, consumers have no practical way of knowing that Defendant's former Spaghetti Warehouse is no longer affiliated with, sponsored, authorized, or endorsed by Spaghetti Warehouse. As a result, any consumer dissatisfaction with Defendant's restaurants, or with the products and services offered in connection therewith, will be attributed to Spaghetti Warehouse and the entire Spaghetti Warehouse network.

18.     Defendant has received actual notice of its violation and infringement of the Licensed Property and has constructive notice of Spaghetti Warehouse's rights in the trademarks and the registrations thereof pursuant to 15 USC § 1072.

19.     After being notified in June 23, 2025 that the License has been terminated to cease and desist from Defendant's continued infringement is willful, ~~malicious, fraudulent~~, and deliberate.

20.     In my capacity, I am competent to state that the conduct of the Defendant, unless immediately restrained by this Court, will immediately and forever deprive Spaghetti Warehouse of its considerable investment in the Licensed Property, including, but not limited to, its registered trademarks.

Executed in _Orange_ County, _Newport Beach_ on October _01_, 2025.

_____
Doug Pak
Declarant

APPENDIX 000019

## LICENSE AGREEMENT

This LICENSE AGREEMENT ("Agreement") is made and entered into effective as of the 11th day of December, 2018, by and between Spaghetti Warehouse Restaurants, Inc., a Texas corporation ("Licensor" or "SWRI"), and **SPAGHETTI WAREHOUSE RESTAURANT OF CNY LLC**, a New York limited liability company ("Licensee").

## RECITALS

A.      Licensor has developed a brand using the name "Spaghetti Warehouse" (the "Brand"), including the registered trademarks, THE SPAGHETTI WAREHOUSE and THE SPAGHETTI

WAREHOUSE RESTAURANT logo:              (the "Proprietary Marks"), a restaurant/food service concept and system, proprietary materials and methods, know-how, trade secrets, recipes, menus, trade dress, logos, domain names (including www.meatballs.com), advertising materials, alphanumeric telephone numbers, websites, inventions, works of authorship, discoveries, improvements, designs, ideas, plans, and other intellectual property used in connection with the Brand, whether written or in electronic, digital or other form and whether or not patentable under patent laws or eligible for protection under trademark, copyright or other laws (the "Intellectual Property").

B.      Licensor and Licensee have entered that certain Asset Purchase Agreement dated October 9, 2018 ("APA") pursuant to which Licensor is selling certain restaurant assets and assigning a lease for Spaghetti Warehouse restaurant (the "Restaurant") at that certain location of 689 N. Clinton Street, Syracuse, New York ("Location").

C.      Licensee desire to continue to use the Intellectual Property at the Restaurant it is purchasing and Licensor desires to license the Intellectual Property to Licensee for such use at the Location.

D.      Licensor and Licensee desire to execute and deliver this Agreement to evidence the parties' respective rights and obligations.  The nonexclusive license granted in this Agreement is subject to the terms and conditions set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

### Article 1.  Grant of License; License Fee.

1.1  Grant.  Subject to the terms and conditions set forth in this Agreement, Licensor grants to Licensee the non-exclusive right and license to use the Intellectual Property in connection with the operation of the Restaurant at the Location (hereinafter referred to as the "Licensed Property").

1.2  Use of the Licensed Property.  Licensee will use the Licensed Property consistent with this Agreement and only in connection with offering goods and services at the Location.  Licensee agrees that it will not use or permit the Licensed Property to be used: (a) in any manner that would tend to injure, demean or dilute the reputation or value of Licensor, the Intellectual Property or the goodwill symbolized by the Intellectual Property, (b) on products or services other than those permitted by Licensor, or (c) except as specifically provided in Section 1.2.

4821155-2

APPENDIX 000020

In order to protect the reputation and goodwill of SWRI and to maintain the standards of operation under the Proprietary Marks, Licensee shall:

1.2.1 Use the Proprietary Marks only in a manner authorized and permitted by SWRI.

1.2.2 Observe all such requirements with respect to trademark and service mark notices, fictitious name registrations, and the display of the legal name as SWRI may direct.

1.2.3 Execute all documents requested by SWRI that are necessary to obtain protection of the Proprietary Marks or to maintain their continued validity or enforceability, and to take no action that would jeopardize the validity or enforceability thereof.

1.3 <u>License Agreement Only</u>. The rights granted by this Agreement constitute a license only, and all rights of ownership of the Licensed Property and the goodwill symbolized thereby will belong exclusively to Licensor. All use rights of the Licensed Property will inure to the benefit of Licensor. Licensee will not at any time acquire any rights in the Licensed Property by virtue of any use it may make of the Licensed Property. Licensee will not at any time that this Agreement is in force, or thereafter, contest the ownership or validity of any of the Licensed Property nor assist anyone else to do so, nor do anything that would jeopardize or diminish Licensor's rights to or in the value of the Licensed Property. Licensee must use or display the Licensed Property strictly in conformity with Licensor's specifications.

1.4 <u>Reservation of Rights</u>. Licensor expressly reserves all rights to use and exploit, and to sublicense third parties to use and exploit, the Intellectual Property anywhere in the world for any products or services..

1.5 <u>License Fee</u>. Commencing February 1, 2019 Licensee will pay Licensor a License Fee equal to 1% of Licensee revenues at the Restaurant for each month (the "License Fee"). The License Fee shall be paid to Licensor or its designee within sixty (60) days following the end of a calendar year. The License Fee for the first calendar year (2019) shall be apportioned based upon the Licensee's obligation to only pay a License Fee from and after February 1, 2019. For each Renewal term, a Renewal fee of five thousand dollars ($5,000.00) shall be due and payable upon the first day of the Renewal terms.

### Article 2.  **Quality of Services and Related Products**.

Licensee retains and shall exercise significant control over all operations of the Restaurant location and in exercising such control will provide products and services of a consistent and high quality that conform to the standards, rules, regulations and operating guidelines historically used in the Restaurant and ensure that any such replacement standards, etc., adopted by Licensee are not materially adverse to Licensor's brand. The foregoing right includes Licensee's right to modify, supplement and remove menu items.

### Article 3.  **Marking.**

3.1 <u>Reproduction of Marks</u>. All actual uses by Licensee of any trademarks owned by the Licensor relating to the Brand must accurately reproduce such trademarks as instructed by Licensor. Licensee must implement at its expense any reasonable change to any of the trademarks designated by Licensor if Licensee's use of such trademarks does not meet Licensor's original instructions relating to the same. Notwithstanding the foregoing, if Licensor requests that Licensee change the trademarks due to a redesign of the trademarks and/or the Brand, then such changes will be at Licensor's expense. From time to time upon Licensor's request, Licensee will submit to Licensor for approval samples of materials (e.g., labels, signs, and advertising) showing the manner in which the marks are used so that Licensor can monitor use of the marks.

2

4821155-2

APPENDIX 000021

3.2 Approval. Notwithstanding the foregoing, no prior approval will be required for packaging, signs, promotional materials or the like prepared by Licensor for use by Licensee.

3.3 Notices. Licensee must display conspicuously on or adjacent to each reproduction of any one of the marks the symbol "®", "SM", or "TM" (as may be appropriate), or such other symbol as may be authorized under the law, so as to provide notice of Licensor's proprietary interest in the same. Licensee must use the symbol "®" or other notice of registration permitted under United States law, in connection with any of the marks that now or subsequently are registered with the United States Patent and Trademark Office. All copies of copyrighted materials used or distributed by Licensee must display conspicuously on the materials the copyright notices as designated by Licensor and as may be authorized under the law, so as to provide notice of Licensor's proprietary interest in the same.

## Article 4. Notification of Infringement.

If any infringement of the Intellectual Property comes to the attention of Licensee, or if another person claims Licensee's use of the Licensed Property infringes rights of such person, then Licensee must notify Licensor promptly of the infringement or claim. Licensor will wholly control any response to the infringement or claim, including any settlement of the same, and will be entitled to all damages awarded based on infringement of the Intellectual Property.

## Article 5. Term and Termination.

5.1 Effective Date. This Agreement will be effective as of the date first written above.

5.2 Term. The term of this Agreement will be ten years, unless earlier terminated by mutual agreement or pursuant to this Article 5. This Agreement will automatically renew for additional ten year periods unless Licensee provides notice of its election not to renew at least 60 days in advance of the anniversary date of this Agreement.

5.3 Termination. Upon the occurrence of any event of default described below (an "*Event of Default*"), Licensor may, at its option, and without waiving any rights hereunder or any other right available at law or in equity, including its right to damages, terminate this Agreement and all of Licensee's rights hereunder shall terminate effective immediately upon the date that Licensor gives written notice of termination, upon such other date as may be set forth in such notice of termination, or in those instances enumerated in subparagraphs 5.3.1, 5.3.3 and 5.3.4 below, automatically upon the occurrence of, or the lapse of the specified period following, an Event of Default. The occurrence of any one or more of the following events shall constitute an Event of Default and grounds for termination of this Agreement by Licensor:

5.3.1 If Licensee fails to comply in any respect with any of its covenants or agreements contained in this Agreement, which failure to so comply has not been cured within thirty (30) days following receipt of written notice of such failure to comply; or

5.3.2 If Licensee attempts, without the prior written consent of Licensor, to transfer, assign, sell, hypothecate, pledge, lien, encumber or sublicense its rights under this Agreement;

5.3.3 If Licensee breaches any of its payment obligations hereunder and such failure has not been cured within thirty (30) days following receipt by Licensor of written notice of such failure to pay; or

3

4821155-2

APPENDIX 000022

5.3.4   In the event that Licensee shall cease the operation of the Location as a "Spaghetti Warehouse" restaurant this Agreement shall automatically terminate, without notice or action required by Licensee other than the payment of full License Fee through the date of termination, as set forth in Article 1.4, and all of Licensee's rights hereunder shall terminate effective immediately.

5.3.5 Licensee may terminate this Agreement for or without cause at any time upon thirty (30) days prior written notice to Licensor. Upon termination, (i) for any period after February 1, 2019, the License Fee shall be paid and prorated through the date of termination, as set forth in Article 1.4, and all of Licensee's rights hereunder shall terminate effective as of such termination date.

5.4   Remedies Cumulative.  The right to terminate this Agreement will be in addition to any other right or remedy available at law or in equity.

5.5 Use after Termination/Expiration.  Upon termination and/or expiration of this Agreement, Licensee will have no rights to the Proprietary Marks, the name "Spaghetti Warehouse" or anything confusingly similar thereto, and/or the domain name www.meatballs.com, unless otherwise agreed by Licensor.  .Licensee may continue to use the non-branded intellectual property (e.g. recipes, concept, system) after termination and/or expiration of this Agreement. It is specifically understood and agreed that any and all indemnity claims shall survive and not be affected by termination of this Agreement.

### Article 6.  **Proprietary Rights.**

6.1 Acknowledgment of Rights.  Licensee acknowledges that the Licensed Property, all materials, methods and systems relating thereto, and all rights therein, are proprietary to and are the sole property of Licensor.  Licensee acknowledges that it has no rights in or to such materials, that it will not acquire any rights in such materials as a result of this Agreement, and that it may not use such materials without the consent of Licensor.  Licensee acknowledges that the assignments and restrictions set forth in this Article 6 are reasonable and necessary to protect Licensor and its business interests.

6.2 Assignment of Developments.  Licensee agrees that any and all future developments pertaining to the Licensed Property as well as all rights in any and all promotional materials (collectively, the "Developments"), developed by Licensee using the Licensed Property will inure to the benefit of Licensor. Licensee hereby transfers, assigns and conveys to Licensor the Developments that use the Licensed Property, together with all copyrights, patents, trademark, trade secret or other proprietary rights therein or relating thereto, together with the associated goodwill.  Licensee agrees that all rights and benefits in and to the Licensed Property and/or any Developments that use the Licensed Property created or developed by any independent contractor on behalf of Licensee will inure to the benefit of, and are hereby conveyed to, Licensor.  Any Developments that do not use the Licensed Property remain the property of Licensee.

6.3 Confidentiality.  Each party agrees that it will not, either during the term of this Agreement or thereafter, except as permitted under this Agreement or as authorized in writing by the non-disclosing party (the "Non-Disclosing Party") in writing: (a) disclose, reveal, divulge, furnish, disseminate or deliver ("Disclose") any information or documentation designated as confidential ("Confidential Information") by the Non-Disclosing Party to any third party; (b) use, utilize, employ, lecture upon, publish, rewrite, reproduce or reverse engineer ("Use"), any Confidential Information, for the benefit of such party or any other person or entity; or (c) authorize or permit any third person or entity to Disclose or Use any Confidential Information.

4

4821155-2

APPENDIX 000023

## Article 7. **Miscellaneous Provisions.**

7.1 Assignment and Sublicensing. Licensee will not assign, transfer, sublicense or otherwise convey any or all of its rights or obligations under this Agreement without the prior written consent of Licensor, which consent will not be unreasonably withheld.

7.2 Entire Agreement; Amendment. This Agreement sets forth the entire understanding between the parties relating to the subject matter contained herein and merges all prior discussions between them with respect to that subject matter. No modification or amendment of this Agreement will be effective unless it is set forth in a writing duly executed by or on behalf of the parties.

7.3 Notice. All notices and other communications required or permitted by this Agreement shall be in writing and shall be deemed given to a party when (a) delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid), (b) received or rejected by the addressee, if sent by certified mail, return receipt requested, or (c) received and acknowledged by email, in each case to the following addresses or email addresses and marked to the attention of the person (by name or title) designated below (or to such other address, email address or person as a party may designate by notice to the other parties):

> If to Licensor:      Spaghetti Warehouse Restaurants, Inc.
> 20377 SW Acacia St., 2nd Floor,
> Newport Beach, CA 92660
>
> Attn: Doug Pak
>
> If to Licensee:      Spaghetti Warehouse Restaurant Of CNY, LLC
> 411 Theodore Fremd Avenue
> Suite 206
> Rye , New York 10580
> Attn: Kathleen Northrop

7.4 Attorneys' Fees. Anything to the contrary herein notwithstanding, in the event of any litigation arising out of this Agreement, the court or tribunal will award to the prevailing party all reasonable costs and expenses, including attorneys' fees.

7.5 Injunctive Relief. The parties acknowledge that damage arising from breach of this Agreement may be extensive and cause immediate and irreparable harm. The parties therefore acknowledge and agree that injunctive relief may be appropriate to enforce any provision of this Agreement. The right to injunctive relief will be in addition to any other right or remedy available at law or in equity.

7.6 Governing Law; Jurisdiction. This Agreement will be governed by and construed under the laws of the State of Texas without regard to conflicts-of-laws principles that would require the application of any other law. Any proceeding arising out of or relating to this Agreement or the relationship of Licensee and Licensor may be brought in the courts of the State of Texas, and each of the parties irrevocably submits to the exclusive jurisdiction of such courts in any such proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding shall be heard and determined only in any such court and agrees not to bring any proceeding arising out of or relating to this Agreement or the relationship of Licensee and Licensor in any other court. The parties agree that either or both of them may file a copy of this paragraph with any court as written evidence of the knowing, voluntary and bargained agreement between the parties irrevocably to waive any objections to

4821155-2

APPENDIX 000024

venue or to convenience of forum. Process in any proceeding referred to in this Article may be served on any party anywhere in the world.

7.8 <u>Severability</u>. Any provision of this Agreement that is found to be prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be deemed to be modified to the extent necessary to render such provision valid and enforceable; if any provision may not be so saved, it will be severed, and the remainder of this Agreement will remain in full force and effect. Modification or severance of a provision in any jurisdiction will not serve to modify, invalidate or render unenforceable such provision in any other jurisdiction.

7.9 <u>No Waiver</u>. No failure or delay on the part of either party in the exercise of any power or right under this Agreement will operate as a waiver thereof, nor will any single or partial exercise of any such power or right preclude other or further exercise thereof of any other right or power. The waiver by any party of a breach of any provision of this Agreement will not operate or be construed as a waiver of any other or subsequent breach hereunder. All rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

7.10 <u>Captions</u>. Captions are for convenience only and will not be used to construe or interpret this Agreement.

7.11 <u>Relationship of the Parties</u>. The rights and powers granted to Licensee are solely those of Licensee. Nothing in this Agreement will be construed as making either party the partner, joint venturer, agent, franchisor, franchisee, employer, or employee of the other. Neither party will have the authority to make any statements, representations or commitments of any kind, or to take any action that is binding on the other, except as provided for in this Agreement or authorized in writing by the party to be bound.

7.12 <u>Counterparts and Facsimile Signatures</u>. This Agreement may be executed in one or more counterparts, each of which when assembled together will be deemed an original. This Agreement may also be executed by facsimile signatures or other electronic signatures, which will be deemed original signatures for purposes of this Agreement.

[No further text on this page. Signatures begin on next page.]

6

4821155-2

APPENDIX 000025

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed effective as of the date and year first above written.

LICENSOR:

**SPAGHETTI WAREHOUSE RESTAURANTS, INC.**
**A Texas corporation**

NAME/TITLE

MICHAEL KIM
PRESIDENT

LICENSEE:

**SPAGHETTI WAREHOUSE RESTAURANT OF CNY LLC**, a New York limited liability company

NAME/TITLE
Kathleen M. Northrup
Authorized Signatory

7

4821155-2

APPENDIX 000026

**CAROLYN H. FOLLIS LEGAL CONSULTANCY SERVICES**

**VIA EMAIL AND CERTIFIED MAIL RETURN RECEIPT REQUESTED**

October 7. 2024

Spaghetti Warehouse Restaurant Of CNY, LLC
411 Theodore Fremd Avenue
Suite 206
Rye, New York 10580
Attn: Kathleen Northrop

RE: Demand/Notice of Breach of that certain License dated December 1, 2018, by and between Spaghetti Warehouse Restaurants, Inc.("SWRI") and Spaghetti Warehouse Restaurant of CNY ("SWCNY "or "Licensee").

Dear Ms. Northrop:

Once again, it has come to my attention that SWCNY has failed to pay the License Fee for Fiscal year 2023. October 7th is far past 60 days from the end of the 2023 Fiscal year as required in Section 1.5. This demand letter serves as written notice of default in accordance with Section 7.

On more than one occasion, Hwan Pak, on behalf of SWRI, has notified Anthony Schlur of SWCNY by direct communication on its lack of providing the 2023 Revenue numbers as well as the failure to pay the License Fee. Yet as of this date, the 2023 Revenue numbers and the License Fee remain outstanding.

For the avoidance of any doubt, this letter is a <u>formal notice</u> of an **Event of Default** for failure to pay and a demand for a full account and payment of the 2023 License Fees.

**Demand is hereby made** that **SWCNY remit the 2023 Revenue report** to Hwan **Pak at** <u>hwan.pak@bldbrands.com</u>**,**

and

**remit the License Fee for the 2023 Fiscal Year** to Spaghetti **Warehouse Restaurants, Inc., 949 South Coast Dr, #450, Costa Mesa, CA 92626**

Be advised, should SWCNY fail to cure this default within 30 days of the email receipt of this letter, in accordance with Section 5.3 SWRI may, at its option, and without waiving any rights or remedies under the contract or at law or in equity, seek damages, and terminate the License **and all of Licensee's rights under the License** would terminate effective (i) immediately upon the date that Licensor gives written notice of termination, (ii) upon such other date as may be set forth in such notice of termination, or (iii) at SWRI's option atomically upon the lapse of the specified period following, an Event of Default.

SWRI expressly reserves its rights and remedies available under the contract and at law.

Sincerely,

Carolyn H. Follis
Legal Consultancy Services
on behalf of Spaghetti Warehouse Restaurants, Inc.

cc: Grant Norrid, Hwan Pak
cc: and direct email to Antony Schlur

APPENDIX 000027



901 Main St., Suite 3900, Dallas, TX 75202
214.672.2000 | cowlesthompson.com

William L. Siegel
Tel: 214-672-2126
Fax: 214-672-2326
bsiegel@cowlesthompson.com

June 23, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUEST 7022 3330 0001 8921 3727 AND FIRST CLASS MAIL**

Spaghetti Warehouse Restaurant of CNY, LLC
411 Theodore Fremd Avenue
Suite 206
Rye, New York, 10580
Attn: Kathleen Northrup

**VIA CERTIFIED MAIL RETURN RECEIPT REQUEST 7022 3330 0001 8921 3734, FIRST CLASS MAIL AND**
**EMAIL:** aschlur@gwfglaw.com, anthony@syracusespaghetti.com

Spaghetti Warehouse Restaurant of CNY, LLC
411 Theodore Fremd Avenue
Suite 206
Rye, New York, 10580
Attn: Anthony Schlur

**VIA CERTIFIED MAIL RETURN RECEIPT REQUEST 7022 3330 0001 8921 3741, FIRST CLASS MAIL AND**
**EMAIL:** patrick@syracusespaghetti.com

Spaghetti Warehouse Restaurant of CNY, LLC
411 Theodore Fremd Avenue
Suite 206
Rye, New York, 10580
Attn: Patrick Dussol

  *Re: Termination of the License Agreement Between Spaghetti Warehouse Restaurants, Inc., as Licensor (hereafter "Licensor"), and Spaghetti Warehouse Restaurant of CNY LLC, as Licensee, (herafter "Licensee") located at 689 N. Clinton Street, Syarcuse, New York*

Dear Messrs. Schlur and Dussol and Ms. Northrup:

Please be advised that the undersigned represents Licensor in reference to the above matter.

June 23, 2025
Page 2

Attached is a Notice of Termination of License Agreement ("Notice").  As representatives of Licensee, among other things set forth in the Notice, you are hereby notified of such termination and to cease and desist from from using the Intellectual Property of Licensor as defined in the License Agreement, the Proprietary Marks, including the name or marks related to Spaghetti Warehouse" including signage and menus or www.meatballsc.com. and the Licensed Property as defined in the Licensed Agreement. Any use of, or aiding and abetting the use of Intellectual Property, the Proprietary Marks, including the name or marks related to Spaghetti Warehouse or www.meatballsc.com. and the Licensed Property following this termination of the License shall give rise to a cause of action for the unlawful use and misappropriation of the Intellectual Property, Proprietary Marks, including the name or marks related to Spaghetti Warehouse or www.meatballsc.com. and the Licensed Property owned by Licensor giving rise to damages and equitable relief.

If you have any questions, please contact me.

Very truly yours,

William L. Siegel

cc: Spaghetti Warehouse Restaurants, Inc.

APPENDIX 000029

# NOTICE OF TERMINATION OF LICENSE AGREEMENT

**VIA CERTIFIED MAIL RETURN RECEIPT REQUEST, FIRST CLASS MAIL AND EMAIL**

To:    **Spaghetti Warehouse Restaurant of CNY, LLC**
        **411 Theodore Fremd Avenue**
        **Suite 206**
        **Rye, New York, 10580**
        **Attn: Kathleen Northrup**
        **Attn: Anthony Schlur: aschlur@gwfglaw.com, anthony@syracusespaghetti.com**
        **Attn: Patrick Dussol: patrick@syracusespaghetti.com**

**Re:    Termination of the License Agreement Between Spaghetti Warehouse Restaurants, Inc., as Licensor (hereafter "Licensor"), and Spaghetti Warehouse Restaurant of CNY LLC, as Licensee, (herafter "Licensee") located at 689 N. Clinton Street, Syarcuse, New York; and**

**BE ADVISED that by virtue of the License Agreement, Licensor granted Licensee a license to use Intellectual Property of Licensor as defined in the License Agreement, the Proprietory Marks as defined in the License Agreement, including the the name or marks related to Spaghetti Warehouse" including signage and menues or www.meatballsc.com and the Licensed Property as defined in the Licensed Agreement (the " Syracuse License")**

**Pursuant to Section 1.5 of the License Agreement, Licensee is required to pay a License Fee of 1% of Licensee Revenues (the "License Fee") for each month to be paid to Licensor within 60 days following the end of a calendar year.**

**On numerous occasions, demand has been made on Licensee to pay the License Fee including demand made on October 7, 2024.**

**BE FURTHER ADVISED, that the last time Licensee paid a Licensee Fee was on December 5, 2023.**

**BE FURTHER ADVISED, by virtue of Licensee's failure to timely pay the License Fee and its failure to cure such default notwithstanding demand made upon Licensee, that effective June 23, 2025, Spaghetti Warehouse Restaurants, Inc. has and does hereby TERMINATE the Syracuse License.**

**BE FURTHER ADVISED that by virtue of such termination, Licensee shall have no rights to use and shall cease and desist from using the Intellectual Property of Licensor as defined in the License Agreement, the Proprietary Marks, including the name or marks related to Spaghetti Warehouse" including signage and menus or www.meatballsc.com. and the Licensed Property as defined in the Licensed Agreement. Any use of, or aiding and abetting the use of Intellectual Property, the Proprietary Marks, including the name or marks related to Spaghetti Warehouse" or www.meatballsc.com. and the Licensed Property following this termination of the Syracuse License shall give rise to a cause of action for the unlawful use and misappropriation of the Intellectual Property, Proprietary Marks, including the name**

1656316.2

APPENDIX 000030

or marks related to Spaghetti Warehouse" or **www.meatballsc.com.** and the Licensed Property owned by Licensor giving rise to damages and equitable relief

Any questions regarding legal issues should be addressed to the undersigned counsel for Spaghetti Warehouse Restaurants, Inc., and any questions regarding business or operational matters should be addressed to Spaghetti Warehouse, Inc., as shown below.

| SPAGHETTI WAREHOUSE RESTAURANTS, INC<br><br>Janiene Mielke, Controller<br>Email: **Janiene.mielke@bldbrands.com**<br>Office: 714-450-7641<br><br>Hwan Pak, Project Manager<br>Email; **Hwan.Pak@bldbrands.com**<br>Cell: 909-967-2010<br>Office: 714-509-5957 | COWLES & THOMPSON, P.C.<br><br>By: _____<br>    William L. Siegel<br><br>901 Main Street, Suite 3900<br>Dallas, Texas  75202<br>Phone (214) 672-2126<br>Facsimile (214) 672-2326<br>Email: **bsiegel@cowlesthompson.com**<br><br>ATTORNEYS FOR SPAGHETTI WAREHOUSE RESTAURANTS, INC |

1656316.2

APPENDIX 000031

# <u>NOTICE OF TERMINATION OF LICENSE AGREEMENT</u>

**VIA CERTIFIED MAIL RETURN RECEIPT REQUEST, FIRST CLASS MAIL AND EMAIL**

**To:** **Spaghetti Warehouse Restaurant of CNY, LLC**
**411 Theodore Fremd Avenue**
**Suite 206**
**Rye, New York, 10580**
**Attn: Kathleen Northrup**
**Attn: Anthony Schlur:** aschlur@gwfglaw.com, anthony@syracusespaghetti.com
**Attn: Patrick Dussol:** patrick@syracusespaghetti.com

**Re:** **Termination of the License Agreement Between Spaghetti Warehouse Restaurants, Inc., as Licensor (hereafter "Licensor"), and Spaghetti Warehouse Restaurant of CNY LLC, as Licensee, (herafter "Licensee") located at 689 N. Clinton Street, Syarcuse, New York; and**

**BE ADVISED that by virtue of the License Agreement, Licensor granted Licensee a license to use Intellectual Property of Licensor as defined in the License Agreement, the Proprietory Marks as defined in the License Agreement, including the the name or marks related to Spaghetti Warehouse" including signage and menues or** www.meatballsc.com **and the Licensed Property as defined in the Licensed Agreement (the " Syracuse License")**

**Pursuant to Section 1.5 of the License Agreement, Licensee is required to pay a License Fee of 1% of Licensee Revenues (the "License Fee") for each month to be paid to Licensor within 60 days following the end of a calendar year.**

**On numerous occasions, demand has been made on Licensee to pay the License Fee including demand made on October 7, 2024.**

**BE FURTHER ADVISED, that the last time Licensee paid a Licensee Fee was on December 5, 2023.**

**BE FURTHER ADVISED, by virtue of Licensee's failure to timely pay the License Fee and its failure to cure such default notwithstanding demand made upon Licensee, that effective June 23, 2025, Spaghetti Warehouse Restaurants, Inc. has and does hereby TERMINATE the Syracuse License.**

**BE FURTHER ADVISED that by virtue of such termination, Licensee shall have no rights to use and shall cease and desist from using the Intellectual Property of Licensor as defined in the License Agreement, the Proprietary Marks, including the name or marks related to Spaghetti Warehouse" including signage and menus or** www.meatballsc.com. **and the Licensed Property as defined in the Licensed Agreement. Any use of, or aiding and abetting the use of Intellectual Property, the Proprietary Marks, including the name or marks related to Spaghetti Warehouse" or** www.meatballsc.com. **and the Licensed Property following this termination of the Syracuse License shall give rise to a cause of action for the unlawful use and misappropriation of the Intellectual Property, Proprietary Marks, including the name**

1656316.2

or marks related to Spaghetti Warehouse" or **www.meatballsc.com.** and the Licensed Property owned by Licensor giving rise to damages and equitable relief

Any questions regarding legal issues should be addressed to the undersigned counsel for Spaghetti Warehouse Restaurants, Inc., and any questions regarding business or operational matters should be addressed to Spaghetti Warehouse, Inc., as shown below.

| SPAGHETTI WAREHOUSE RESTAURANTS, INC | COWLES & THOMPSON, P.C. |
|---|---|
| Janiene Mielke, Controller<br>Email: **Janiene.mielke@bldbrands.com**<br>Office: 714-450-7641<br><br>Hwan Pak, Project Manager<br>Email; **Hwan.Pak@bldbrands.com**<br>Cell: 909-967-2010<br>Office: 714-509-5957 | By: _____<br>   William L. Siegel<br><br>901 Main Street, Suite 3900<br>Dallas, Texas  75202<br>Phone (214) 672-2126<br>Facsimile (214) 672-2326<br>Email: **bsiegel@cowlesthompson.com**<br><br>**ATTORNEYS FOR SPAGHETTI WAREHOUSE RESTAURANTS, INC** |

1656316.2

APPENDIX 000033

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SPAGHETTI WAREHOUSE RESTAURANTS, INC.

## DEFENDANTS

SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC

**(b)** County of Residence of First Listed Plaintiff    Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Westchester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Casey Erick and Bill Siegel of Cowles Thompson PC, 901 Main Street, Suite 3900, Dallas, Texas 75202 ➕

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☒ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC §§ 1116, 1117, 15 USC § 1121(a) , 28 USC § 1338(a), 28 USC § 1338(b)

Brief description of cause:
This case in violation of federally-registered trademarks and unfair competition claims.

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- **DEMAND $** exceeds $75,000
- CHECK YES only if demanded in complaint:
  **JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   10/07/2025

SIGNATURE OF ATTORNEY OF RECORD   /s/Casey Erick

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

APPENDIX 000034

Case 3:25-cv-02727-E   Document 15-5   Filed 03/10/25   Page 72 of 77   PageID 358

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

APPENDIX 000035

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SPAGHETTI WAREHOUSE RESTAURANTS, INC. | § § § § | |
| Plaintiff | § § | CIVIL ACTION NO. 3:25-cv-02727 v |
| v. | § § | |
| SPAGHETTI WAREHOUSE RESTAURANT OF CNY, LLC, | § § § | JURY DEMANDED |
| Defendant | § § § § | |

## PLAINTIFF'S DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PARTIES

Pursuant to Federal Rule of Civil Procedure 7.1, Spaghetti Warehouse Restaurants, Inc.

("Plaintiff"), by and through its undersigned attorneys, states as follows:

1. Plaintiff Spaghetti Warehouse Restaurants, Inc, is a Texas corporation with a principal place of business in Dallas, Texas.

Other persons or other legal entities that may be financially interested in the outcome of this matter are:

1. Spaghetti Warehouse Restaurant of CNY, LLC
   Defendant

2. Defendant Spaghetti Warehouse Restaurants of CNY is a New York corporation with a principal place of business in Rye, New York.

3. Defendant Spaghetti Warehouse Restaurants of CNY owners are Anthony Schlur Esq and Patrick J. Dussol, Esq.

4. Defendant Spaghetti Warehouse Restaurants of CNY registered agent is Kathleen Northrop located at411 Theodore Fremd Avenue, Suite 206, Rye New York, 105060.

APPENDIX 000036

Respectfully submitted,

By _____
**CASEY S. ERICK**
Texas Bar No. 24028564
cerick@cowlesthompson.com

**WILLIAM L. SIEGEL**
Texas Bar No. 18342480
bsiegel@cowlesthompson.com

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, TX 75202-3746
(214) 672-2138
(214) 672-2338 (Fax)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 7th, 2025, a true and correct copy of the above

and foregoing was electronically filed and served upon all counsel of record with the Clerk of the

Court using the CM/ECF system and via-email.

_____
**CASEY S. ERICK**

APPENDIX 000037

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPAGHETTI WAREHOUSE
RESTAURANTS, INC.

    Plaintiff

v.

Spaghetti Warehouse Restaurant of CNY,
LLC,

    Defendant

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 3:25-cv-02727-E

JURY DEMANDED

## DECLARATION OF DOUG PAK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

1.    My name is Doug Pak. I am the Chief Executive Officer of Spaghetti Warehouse Restaurants, Inc. ("Spaghetti Warehouse" or "Plaintiff"). I am over the age of eighteen, have never been convicted of a felony, and am competent to make this declaration.

2.    I make this declaration based on my personal knowledge and on my review of Spaghetti Warehouse's business records kept in the ordinary course of business. If called as a witness, I could and would testify competently to the matters stated herein.

3.    I am the CEO of Spaghetti Warehouse, and I am familiar with the company's brand, intellectual property, registered trademarks, and licensing practices, including the License Agreement at issue in this case.

4.    I am a custodian of records for Spaghetti Warehouse. The records I describe in this declaration, and which are attached in support of Plaintiff's Motion for Default Judgment, including the License Agreement, revenue and sales records, and correspondence with Defendant, are original records or true and correct copies of records made at or near the time of the events they describe by,

172504119.1 DECLARATION OF DOUG PAK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT – PAGE 1

APPENDIX 000043

or from information transmitted by, persons with knowledge of those events. These records are kept in the course of Spaghetti Warehouse's regularly conducted business activities, and it is a regular practice of Spaghetti Warehouse to make and maintain such records. These records include, for example, Defendant's sales reports, revenue summaries, and correspondence regarding annual revenues and license-fee calculations.

5.    On or about December 11, 2018, Spaghetti Warehouse and Defendant Spaghetti Warehouse Restaurant of CNY, LLC ("Defendant") entered into a written License Agreement under which Spaghetti Warehouse granted Defendant a non-exclusive license to use certain Spaghetti Warehouse trademarks ("Marks") and other licensed property at Defendant's restaurant location.

6.    Under the License Agreement, Defendant agreed to pay Spaghetti Warehouse a license fee equal to one percent (1%) of Defendant's monthly revenues, payable within sixty (60) days following the end of each calendar year and an annual license renewal fee of $5,000.00.

7.    The License Agreement provides that Spaghetti Warehouse may terminate the agreement if Defendant commits an event of default, including by failing to pay required fees, after written notice and an opportunity to cure. Upon termination, Defendant is required to cease all use of Spaghetti Warehouse's trademarks and other licensed property and to comply with specified post-termination obligations, including removal of signage and cessation of use of the Marks.

8.    Based on my review of Spaghetti Warehouse's records, Defendant failed to pay the required license fees for calendar years 2023 and 2024 and for the period from January 1, 2025, through June 23, 2025.

9.    Based on my review of Spaghetti Warehouse's records, Defendant also failed to pay the $5,000 annual renewal fee for each of 2023, 2024, and 2025.

10.    On October 7, 2024, Spaghetti Warehouse sent Defendant a written Notice of Default concerning Defendant's failure to pay the 2023 license fee, in accordance with the License

172504119.1 DECLARATION OF DOUG PAK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT – PAGE 2

APPENDIX 000044

Agreement. The notice was sent by certified mail, return receipt requested, and by email, in the manner required by the License Agreement.

11.    Defendant did not cure the default or pay the outstanding amounts identified in the Notice of Default.

12.    On June 23, 2025, counsel for Spaghetti Warehouse sent Defendant a written Notice of Termination of the License Agreement, again in accordance with the License Agreement's notice provisions. In that notice, Spaghetti Warehouse terminated the License Agreement and demanded that Defendant cease all use of Spaghetti Warehouse's trademarks and other licensed property, including the "Spaghetti Warehouse" name and the www.meatballs.com domain.

13.    Despite termination of the License Agreement, Defendant continued to operate its restaurant using Spaghetti Warehouse's name, trademarks, and other licensed property including continued use of the "Spaghetti Warehouse" name in signage and advertising.as an example of their blatant use in November and December 2025, Defendant issued public communications and promotions that used the Spaghetti Warehouse name and trademarks while promoting its restaurant through the end of the year and a "final" New Year's Eve event.

14.    After the termination of the License Agreement, Defendant issued gift cards bearing Spaghetti Warehouse's Marks and branding in connection with the former licensed restaurant. Defendant then failed to honor those gift cards and directed customers to contact Spaghetti Warehouse for refunds.

15.    As a result, Spaghetti Warehouse received numerous calls and communications from customers who had purchased or received these gift cards and believed Spaghetti Warehouse was responsible for refunding them. The customers were confused about whether Defendant's restaurant was affiliated with or endorsed by Spaghetti Warehouse or was authorized to have issued the gift cards in the first place.

APPENDIX 000045

16.    Spaghetti Warehouse was required to devote staff time and resources to responding to these inquiries, explaining that Respondent did not operate the location, had not issued the cards, and that they would need to contact Defendant for any refunds or redemptions.

17.    After ceasing operation of the restaurant as "Spaghetti Warehouse," Defendant began operating at the same location under a new business name, "Click Stream Studios," which is a digital content marketing company. Even after this change, Defendant continued to use references to the Spaghetti Warehouse brand and goodwill in connection with promoting its new business and its transition, creating additional confusion among customers about the relationship between Defendant and Spaghetti Warehouse.

18.    Customers encountering Defendant's signage, website, social-media posts, and other materials using the Spaghetti Warehouse name and Marks had no practical way of knowing that Defendant's business was no longer licensed, affiliated with, or endorsed by Spaghetti Warehouse. Complaints and negative reactions from customers about Defendant's operations and unredeemed gift cards were directed at Spaghetti Warehouse and its brand.

19.    Defendant's continued use of Spaghetti Warehouse's Marks, goodwill, and brand identity after termination has harmed Spaghetti Warehouse's reputation and goodwill, including by causing confusion among customers and by associating Spaghetti Warehouse with a location and operations it does not control.

20.    Based on my review of Spaghetti Warehouse's business records, including Defendant's reported sales figures, I estimate that Defendant's unpaid license fees for calendar years 2023 and 2024 and for the period from January 1, 2025, through June 23, 2025, total approximately $45,000. This estimate is calculated as one percent (1%) of Defendant's revenues for those periods under the License Agreement's license-fee formula.

172504119.1 DECLARATION OF DOUG PAK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT – PAGE 4

21.     Based on my review of Spaghetti Warehouse's records concerning the License Agreement and its renewal history, Defendant was required to pay a $5,000 renewal fee for each of the 2023, 2024, and 2025 renewal terms. Defendant did not pay the renewal fee for any of those years, and the total unpaid renewal fees are therefore $15,000.

22.     During November and December 2025 and through January 1, 2026, Defendant promoted the restaurant and a "final" New Year's Eve event using the Spaghetti Warehouse name and Marks, including in press releases and other advertising.

23.     Consistent with the historical revenue patterns for Defendant's location during comparable prior periods when the restaurant operated under the Spaghetti Warehouse brand. and on the promotional activities Defendant conducted using the Spaghetti Warehouse brand after June 23, 2025, I estimate that Defendant generated approximately [$250,000|] in revenues from November 2025 through January 1, 2026, while continuing to use Spaghetti Warehouse's Marks and goodwill without authorization.

24.     Spaghetti Warehouse seeks an accounting from Defendant of its revenues for calendar years 2023, 2024, and 2025, including revenues generated after the June 23, 2025, termination, so that the precise amounts owed can be determined. The numerical figures I have provided above are derived from the business records available to Spaghetti Warehouse and from Defendant's historical revenue patterns during the license term.

25.     After termination of the License Agreement, Defendant issued and sold gift cards bearing the Spaghetti Warehouse name and Marks in connection with its former licensed restaurant. Defendant then failed to honor those gift cards and directed customers to contact Spaghetti Warehouse for refunds.

26.     Spaghetti Warehouse is seeking a full and accurate accounting from Defendant of all gift cards it issued or sold that bear the Spaghetti Warehouse name or Marks, including the number

172504119.1 DECLARATION OF DOUG PAK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT – PAGE 5

and dollar value of such cards. Spaghetti Warehouse seeks disgorgement of all funds Defendant received from the sale of these gift cards, in addition to the other amounts described above.

27.    Spaghetti Warehouse has complied with its obligations under the License Agreement, including by providing the notices described above in the manner required by the License Agreement.

28.    Defendant has failed to perform its obligations under the License Agreement, including by failing to pay all amounts owed, by failing to cease using Spaghetti Warehouse's Marks and other licensed property after termination, and by failing to perform its post-termination obligations to remove and surrender materials bearing the Marks and to discontinue use of Spaghetti Warehouse's confidential and proprietary information.

29.    Unless Defendant is required to cease its unauthorized use of Spaghetti Warehouse's Marks and brand and to perform its post-termination obligations, Spaghetti Warehouse's goodwill and reputation will continue to be harmed, and customers will continue to be confused regarding the relationship between Defendant and Spaghetti Warehouse.

30.    I declare under penalty of perjury that the foregoing is true and correct.

Executed in Orange County, Calif on February 28, 2026.

_____
Doug Pak
Chief Executive Officer
Spaghetti Warehouse Restaurants, Inc.

172504119.1 **DECLARATION OF DOUG PAK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT – PAGE 6**

APPENDIX 000048


Menu



Home › Featured
› BREAKING NEWS: Spaghetti Warehouse Syracuse Closing, New Content Agency Click Stream Studios To Take It's Place

**CNY NEWS  FEATURED**

# BREAKING NEWS: Spaghetti Warehouse Syracuse Closing, New Content Agency Click Stream Studios To Take It's Place

Click Stream Studios Opens in January

25 days ago

 **6.6k** Views



*Good News York Exclusive*

The Spaghetti Warehouse in Syracuse is closing at the end of this month and in it's place will come Click Stream Studios, a digital content marketing company. Click Stream Studios will maintain many of the iconic elements of the historic restaurant to be used as sets for podcasts and other content.

**Click Stream Studios** produces Good News York.

↑

APPENDIX 000049

One subscription. Five users. Start Premium Access for $5

Advertisement                                                                            Close

CNY RESTAURANTS

# Spaghetti Warehouse to close in Syracuse after more than 35 years

Published: Dec. 13, 2025, 11:54 a.m.



The interior of Spaghetti Warehouse at 689 N. Clinton St in Syracuse. File photo, Spaghetti Warehouse

    

By **Greta Stuckey | gstuckey@syracuse.com**

Syracuse, N.Y. — Spaghetti Warehouse, a longtime Syracuse restaurant known for its trolley car dining room and Italian American comfort food, will close at the end of the year.

The restaurant, located in a historic building near Franklin Square, will serve its final meals on Dec. 31, according to a news release issued Friday.

Maya Hawke hat heimlich geheiratet

The restaurant opened in Syracuse in 1989 and quickly became a staple for families and special occasions across Central New York. Its décor, including the full-size trolley car inside the dining room, made it a memorable restaurant for many.

In a statement, the restaurant cited rising costs and economic challenges as the reason for its closure.

"The decision to close was not easy, but in today's challenging economy, continuing to serve the quality food you love at the prices you expect has become impossible," the statement said. "With heavy hearts, we've chosen to close — but not before giving guests the opportunity to join us for a final meal, last toast or one more memory."



Save articles to read later.

Learn More

The 16,000-square-foot building will soon take on a new role as the future home of Click Stream Studios, a content marketing and live social selling company that plans to transform the space into its headquarters.

Click Stream Studios said in the news release that it plans to preserve many of the building's historic features, including parts of the dining room, antique fixtures and the iconic trolley car. The spaces will be repurposed as production sets for podcasts, short-form video, live shopping broadcasts and other digital content, the company said.

The new studio will include multiple creator sets, podcast rooms, photography suites, event space and dedicated brand studios for companies looking to establish a long-term content presence, the company said. The facility is designed to support content for platforms such as TikTok Shop, Amazon, Facebook and more.

Company officials say the project aims to position Syracuse as a hub for influencer marketing, shoppable video commerce and digital content production, serving both local businesses and national brands.

Click Stream Studios is a division of Growth Mode Technologies LLC, a Syracuse-based business technology company.



Spaghetti Warehouse restaurant building in Syracuse. Rick Moriarty / rmoriarty@syracu

 **Greta Stuckey**

Greta Stuckey joined Syracuse.com │ The Post-Standard in November 2024 as a crime and public safety reporter. She covers topics including crime, politics and the occasional human-interest story. Before joining...more

✉ gstuckey@syracuse.com    in

---



▼ **About Us**

About Us

Photo and Page Reprints

Advertise with us

Jobs at Advance Media New York

Contact Us

**See full details in the below press release.**



**Spaghetti Warehouse Closing PRESS RELEASE PDF**    DOWNLOAD

PRESS RELEASE

12/12/2025

**For Immediate Release**

**Spaghetti Warehouse Syracuse Sets Closing Date as Click Stream Studios Prepares to Open a 16,000+ Square Foot National Content Headquarters**

Syracuse NY: After nearly forty years of serving families across Central New York, Spaghetti Warehouse in downtown Syracuse will officially close on December 31st. Since opening in the mid-1980s, Spaghetti Warehouse Syracuse has been a cornerstone of Central New York dining—a place where families gathered, friends reconnected, and traditions were born. Known for its hearty Italian-American dishes and its unique, eclectic décor (including the famous trolley car inside), it quickly became one of the city's most recognizable and beloved restaurants.

APPENDIX 000050



**A Message From Spaghetti Warehouse Syracuse:**

"To our Spaghetti Warehouse Syracuse friends and family: thank you for letting us be part of your lives. From first dates to family reunions, from holiday dinners to everyday moments, we've cherished every story that unfolded within these walls. Your smiles, your celebrations, and your loyalty have meant the world to us. The decision to close was not easy, but in today's challenging economy, continuing to serve the quality food you love at the prices you expect has become impossible. With heavy hearts, we've chosen to close—but not before giving guests the opportunity to join us for a final meal, last toast or one more memory."

**Spaghetti Warehouse Syracuse will remain open through the end of the year.**

**Click Stream Studios arrives**.

APPENDIX 000051

Much of the historic dining room, antique fixtures, and beloved full size trolley car will remain and will become signature production sets for high output content campaigns. Click Stream Studios will showcase the character of the building through studio quality podcasts, viral short form content, creator series, and daily live shopping broadcasts.

The goal is simple. Preserve the identity of the space and broadcast it nationwide for brands that want storytelling with personality and history behind it. The studio will be built to support integration with major platforms including Facebook, Whatnot, Amazon, TikTok Shop, and others while leveraging partnerships with Influencers, YouTube creators, and consumer brands searching for high quality, effective content strategies.

APPENDIX 000053

AI Mockup

**A Creative Engine for Syracuse Businesses and Beyond**

The new location will feature multiple creator sets, photography suites, podcast rooms, a connected event space, and dedicated brand studios for companies that want their own long term content presence. It positions Syracuse as a serious player in the rapidly expanding world of influencer marketing, shoppable video commerce, and AI assisted content production.

From regional companies to national brands, the facility is designed to match the production expectations of modern players like Shopify storefronts, direct to consumer brands, and enterprise clients looking for measurable digital growth.

**Special Thanks**

Click Stream Studios extends its appreciation to Sutton Management and O'Connell More Consulting for their work, collaboration, and guidance in bringing this deal to completion.

**About Click Stream Studios**

Click Stream Studios is a one-of-a-kind content marketing team focused on high performing short form video, podcast production, live social selling, shoppable video development, and full-service digital marketing services. The company helps businesses grow through strategic content creation designed for today's digital platforms and consumer behavior. Click Stream Studios is a division of Growth Mode Technologies LLC, a Syracuse based business technology company.

**Media Contact**

**Matt Masur**

Founder

**Click Stream Studios**
Matt@GrowthModeTech.com
315.333.0999
ClickStreamStudios.com

APPENDIX 000055

36°

**LIVE NOW**   Watch WSYR+ Live Stream here

**DOWNLOAD WSYR+**
What are you waiting for? Download the free WSYR+ app for Roku, Amazon Fire, Apple TV and Samsung.

LOCAL NEWS

# Syracuse's historic Spaghetti Warehouse space gets new life as digital company hub

by: **Ashley Cafaro**
Posted: Jan 20, 2026 / 04:00 PM EST
Updated: Jan 20, 2026 / 06:16 PM EST

SHARE

SYRACUSE, N.Y. (WSYR-TV) — A Downtown Syracuse landmark is getting a second life. The former Spaghetti Warehouse closed its doors at the end of 2025, but a fast-growing digital company is stepping up.

"We found this space b                                                          sur, founder of **Click Stream Studios**.

APPENDIX 000058

 

1 / 13

For nearly 40 years, Spaghetti Warehouse has been one of downtown's most recognizable spots. But after closing at the end of December 2025, the iconic building is being reimagined, not as a restaurant, but as a creative production headquarters for Click Stream Studios.

The content marketing and live social selling company works with different brands and creators, and also has its own podcast, called Good News York.

ADVERTISEMENT



The whole philosophy for us is like,

"We focus on making video and social media content for businesses, primarily. We are also very heavy into making podcasts," Masur said.

Masur said that it wasn't just the location that stood out, but the size of the space, too.

ADVERTISEMENT

READ NEXT >                                                                    ✕

**Which states do not require an ID to vote in-person?**

Next story in 5

APPENDIX 000059

"The location, first and foremost, being sort of centrally located in Downtown Syracuse, was ideal for us. But then, just the size of the space, giving us all kinds of options to do a wide variety of things. We are actually going to have an event space as well. So we will be able to have events there, but it will be camera and lit up, so we can record and livestream those events in high quality to people who aren't here," Masur said.

The new space will include creator sets, podcast rooms and production studios.

"This massive space gives us the capability to have that set up all in one place. Rather than building sets in one tiny room each time, we will now have them all over the building, and we can just turn the cameras in different directions and have those options for our clients," Masur said.

The more than 16,000-square-foot space is filled with Syracuse history.

ADVERTISEMENT

"We love so much of the existing decor, the original brick of the building," Masur said.

While the space is changing, some of its most iconic features aren't going anywhere, including the restaurant's famous trolley.

"The bones of the building, the layout, things like that, people are going to recognize as very much that iconic Spaghetti Warehouse," Masur said.

Click Stream Studios said it will be leasing the first floor, where Spaghetti Warehouse once stood, for the next several years. The living space above will stay the same.

ADVERTISEMENT

READ NEXT >

Which states do not require an ID to vote in-person?

Next story in 5

APPENDIX 000060

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPAGHETTI WAREHOUSE     §
RESTAURANTS, INC.     §
    §
    Plaintiff,     §
    §
v.     §     CIVIL ACTION NO. 3:25-cv-02727-E
    §
SPAGHETTI WAREHOUSE     §     JURY DEMANDED
RESTAURANT OF CNY, LLC,     §
    §
    Defendant.     §

### UNSWORN DECLARATION OF CASEY S. ERICK

Casey S. Erick, pursuant to 28 U.S.C. § 1746 hereby declares as follows:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge.

2.      I am lead counsel for Plaintiff and submit this Declaration in support of Plaintiff's Motion for Default Judgment and claim for attorney's fees.

3.      I am a partner in the law firm of Lewis Brisbois Bisgaard & Smith, LLP, the firm that represents Plaintiff in the above-referenced lawsuit. Prior to joining Lewis Brisbois Bisgaard & Smith, LLP, I was a partner at Cowles & Thompson, P.C.

4.      I have personal knowledge of the facts stated herein and, if called to testify, would competently testify thereto.

5.      Plaintiff, Spaghetti Warehouse, is a well-known restaurant chain that is a Texas corporation with its principal place of business in Dallas, Texas.

6.      Defendant is a New York limited liability company with its principal place of business in Rye, New York. I am familiar with the Defendant and its owners.

173216891.1 UNSWORN DECLARATION OF CASEY S. ERICK – PAGE 1

7.      This action arises under the Lanham Act and related statutes; the Court has subject-matter jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, 1332(a)(1), 1338(a)-(b), and supplemental jurisdiction under 28 U.S.C. § 1367(a). I personally drafted all of the pleadings in this lawsuit and have performed all of the legal work required to obtain this default judgment.

8.      On October 7, 2025, I filed Plaintiff's Original Complaint for Permanent and Injunctive Relief, Damages, and Other Relief. (Doc. 1).

9.      On October 8, 2025, the Court issued a Summons as to Defendant, Spaghetti Warehouse Restaurant of CNY, LLC. (Doc. 6).

10.     On October 27, 2025, in accordance with the Fed. R. Civ. P. 4, Defendant was served, and the Return of Service was filed on November 12, 2025. (Doc. 8).

11.     Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant was required to file an answer or other responsive pleading within 21 days after being served. Because service was affected on October 27, 2025, Defendant's answer or other responsive pleading was due on or before November 17, 2025.

12.     On December 5, 2025, the Clerk of the Court entered a default against Defendant. (Doc. 12).

13.     To date, Defendant has failed to file an answer or other responsive pleading within the time required by Fed. R. Civ. P. 12(a)(1)(A)(i).

14.     As previously sworn, Defendant is not an infant, incompetent person, in active military service of the United States of America or its officers or agents. (Doc. 11).

15.     Plaintiff retained me to represent it in connection with this lawsuit.

16.     Plaintiff agreed to pay my firm on an hourly basis. Payment of attorneys' fees was not contingent on the outcome of the litigation. True and correct copies of the invoices submitted

173216891.1 UNSWORN DECLARATION OF CASEY S. ERICK – PAGE 2

by my prior firm and this firm in this matter reflecting the services performed and fees charged, redacted to protect privileged and confidential matters, are attached hereto.  The invoices reflect the actual work performed by myself, and other lawyers and staff with detailed descriptions of the services provided. The work consisted of: (i) investigating Plaintiff's claims; (ii) corresponding and communicating with Plaintiff, Defendant and other third parties; (iii) preparing and filing the Original and other litigation documents; and (iv) pursuing default judgment against Defendant.

17.    My hourly rate for this matter is $350.00 per hour.

18.    I have been licensed to practice law in the State of Texas since 2002, and I am Board Certified in Civil Trial Law since 2023.

19.    Since 2002, I have been continuously and actively engaged in the practice of law throughout the State of Texas. My practice has consisted primarily of complex commercial litigation that includes intellectual property and federal court litigation. Based on my experience, I am familiar with the reasonable and customary charges for legal services, in the Dallas, Texas area in this type of action. I am familiar with the reasonable attorneys' fees for the same or similar work that has been performed in connection with this matter. My hourly rate is both customary and reasonable in the Dallas, Texas market for the types of rendered and my experience level.

20.    Plaintiff seeks recovery of its attorneys' fees and costs incurred in defending its copyrights and trademarks pursuant to breach of contract law, the Copyright Act and, alternatively under the Lanham Act.

21.    The majority of the time reflected in the attached invoices was necessary for the pursuit of Plaintiff's copyright and trademark claims against Defendant.

22.    After filing suit, it was very difficult finding and serving the Defendant. They did not accept service and would not respond to any requests to accept service.

173216891.1 UNSWORN DECLARATION OF CASEY S. ERICK – PAGE 3

23. Eventually, I had to serve the Defendant at their work addresses as they are both licensed attorneys. It was only then did they communicate with me about this lawsuit.

24. Despite numerous attempts to try and resolve this matter, or obtain any information from Defendant to determine Plaintiff's measure of damages, Defendant refused to participate and, to date, has not filed any response to the lawsuit or provided any information, even though it is contractually obligated.

25. I have also analyzed the reasonableness of the fees in light of the following factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-7109 (5th Cir. 1974). The Johnson factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Based on my analysis of the above factors, which I discuss below, I find that the fees Plaintiff seeks to recover are reasonable and were necessary.

26. Factor 1 (Time and Labor Required): Plaintiff was required to retain attorneys specializing in copyright and trademark litigation to pursue its claims in this matter. The firm focused its efforts on obtaining a quick and efficient resolution of all claims in this matter. In light of Plaintiff's objective to obtain injunctive relief preventing Defendant's ongoing infringement, the firm worked extremely efficiently to obtain the desired result, and its fees were reasonable in light of time and labor required to pursue the claims.

173216891.1 UNSWORN DECLARATION OF CASEY S. ERICK – PAGE 4

27.     Factor 2 & 3 (Novelty and Difficulty of the Questions/Skill Required): The proper pursuit of Plaintiff's claims in this matter required expertise in copyright and trademark litigation, which expertise the firm provided. Although the case presented no questions that were particularly novel or difficult, the firm's fees were relatively low in light of the results sought, and were therefore reasonable under this factor.

28.     Factor 4 (Preclusion of other Employment): Other than time spent working on this matter, the firm's engagement on this matter has not precluded the firm's attorneys from working on other matters. However, based on my experience, the firm's fees were reasonable in light of this factor because, as discussed above, the fees are set at market rates for intellectual property litigation in the Dallas, Texas area.

29.     Factors 5 & 12 (Customary Fee/Awards in Similar Cases):  I have handled several copyright and trademark matters through judgment and default judgment. Although every matter is unique, I believe that the firm's fees charged pursuing this matter are equal to or less than the fees that would customarily be charged in the Dallas, Texas market to obtain similar results.

30.     Factor 6 (Whether the Fee Was Fixed or Contingent): The fee charged in this matter was neither fixed or contingent on the results obtained. In light of the fact that the firm's rates are set to match the market and the amount of time spent on this matter were reasonable, the fees charged were reasonable in light of this factor.

31.     Factor 7 (Time Limitations Imposed by the Client or Circumstances): Given Defendant's infringing activity despite termination notices Plaintiff, desired to get relief; as quickly and efficiently as possible. Defendant's failure to timely appear or participate has made that particularly challenging. The firm's fees are reasonable in light of this factor.

APPENDIX 000065

32.     Factor 8 (Amount Involved and Results Obtained): The    amount    of    money involved in Defendant's breach and infringement has been difficult to determine in light of Defendant's refusal to timely appear and participate in discovery. In addition to fees, Plaintiff is seeking both injunctive relief and statutory damages, in addition to orders requiring Defendant to produce financial records which it was contractually obligated to do under the License Agreement so that Plaintiff can determine the exact amount of licensing fees. The fees sought are reasonable in light of the relief sought.

33.     Factor 9 (Experience, Reputation, and Ability of Attorneys): The rates charged by the firm were also reasonable considering the experience, reputation and abilities of the lawyers performing the services. All timekeepers who performed work on this matter were qualified and their rates were commensurate with their levels of experience, as discussed above.

34.     Factor 10 (Undesirability of the Case): Although I would not characterize the case as undesirable, Defendant's refusal to timely appear and participate has presented frustration and challenges of its own. Especially when the determination of damages relies on the records which Defendant has not produced. This factor therefore supports the reasonableness of the firm's fees.

35.     Factor 11 (Nature and Length of Client Relationship): The firm's fees in this matter are also reasonable in light of the nature and length of its relationship with Plaintiff. Plaintiff engaged the firm, and the undersigned attorney, to pursue this matter as well as provide other legal services since 2020. Plaintiff has continued to place its trust and confidence in the undersigned attorney, and this firm, and further supports the argument that the fees charged are reasonable in light of the level of service provided and results obtained, including in this matter.

36.     In light of the above, I am of the opinion that the fees charged by in the amount of $22,434.50 in pursuing this matter on behalf of Plaintiff were reasonable, and the tasks performed were necessary under the circumstances

37.     I declare under penalty of perjury that the foregoing is true and correct. Executed on March 13, 2026.

**BLD Brands (11922)**                                                                                               **03/09/2026**

| Invoice | Matter | Matter Description | Type | Date | Time | Cost | Total | Balance | Status | Check No. | Check Date | Payor | Email |
|---------|--------|--------------------|------|------|------|------|-------|---------|--------|-----------|------------|-------|-------|
| 375163 | 77590 | Rosebriar Stemmons, LP v. BLD Brands | Invoice | 03/11/2020 | ███ | ██ | ███ | ████ | | | | | |

**Confidential - for internal purposes only.**

APPENDIX 000068

**BLD Brands (11922)**    03/09/2026



Confidential - for internal purposes only.

APPENDIX 000069

**Last Payment (02/16/2026): 4,270.00**

**BLD Brands (11922)**      **03/09/2026**



| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 430033 | 82146 | General | Invoice | 12/23/2024 | 1,015.00 | 0.00 | 1,015.00 | 1,015.00 Paid | | | |
| 430033 | 82146 | General | Payment | 04/10/2025 | -1,015.00 | 0.00 | -1,015.00 | 0.00 | 704246 | 04/03/2025 | Warehouse 72 |
| 434937 | 82146 | General | Invoice | 05/13/2025 | 350.00 | 0.00 | 350.00 | 350.00 Paid | | | |
| 434937 | 82146 | General | Payment | 02/16/2026 | -350.00 | 0.00 | -350.00 | 0.00 | 504965 | 02/03/2026 | Spaghetti Warehouse |
| 436705 | 82575 | Spaghetti Warehouse New York | Invoice | 07/07/2025 | 1,470.00 | 0.00 | 1,470.00 | 1,470.00 Paid | | | |

**Confidential - for internal purposes only.**    APPENDIX 000070   

**BLD Brands (11922)**                                                                                                    **03/09/2026**

| Invoice | Matter | Matter Description | Type | Date | Time | Cost | Total | Balance | Status | Check No. | Check Date | Payor | Email |
|---------|--------|-------------------|------|------|------|------|-------|---------|--------|-----------|-----------|-------|-------|
| 436705 | 82575 | Spaghetti Warehouse New York | Payment | 02/16/2026 | -1,470.00 | 0.00 | -1,470.00 | 0.00 | | 504965 | 02/03/2026 | Spaghetti Warehouse | |
| 438215 | 82575 | Spaghetti Warehouse New York | Invoice | 08/08/2025 | 70.00 | 0.00 | 70.00 | 70.00 | Paid | | | | |
| 438215 | 82575 | Spaghetti Warehouse New York | Payment | 02/16/2026 | -70.00 | 0.00 | -70.00 | 0.00 | | 504965 | 02/03/2026 | Spaghetti Warehouse | |
| 440057 | 82575 | Spaghetti Warehouse New York | Invoice | 10/20/2025 | 2,380.00 | 0.00 | 2,380.00 | 2,380.00 | Paid | | | | |
| 440057 | 82575 | Spaghetti Warehouse New York | Payment | 02/16/2026 | -2,380.00 | 0.00 | -2,380.00 | 0.00 | | 504965 | 02/03/2026 | Spaghetti Warehouse | |
| 440935 | 82575 | Spaghetti Warehouse New York | Invoice | 11/13/2025 | 2,245.00 | 1,149.50 | 3,394.50 | 3,394.50 | Open | | | | |
| **Report Totals:** | | | | | **2,245.00** | **1,149.50** | **3,394.50** | | | | | | |

**Confidential - for internal purposes only.**

APPENDIX 000071

### Friday, March 13

Unreleased: **5.10**
Total Time: **5.10**

**BLD Ventures vs. SW NYC**
**Temporary Matter**
Finalize motion, brief, and exhibits in support of motion for default judgment.

**5.10**

**DRAFT**

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

### Thursday, March 12

Unreleased: **1.50**
Total Time: **1.50**

**BLD Ventures vs. SW NYC**
**Temporary Matter**
Continue work on draft attorney's fees affidavit.

**1.50**

**DRAFT**

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

### Tuesday, March 10

Unreleased: **1.70**
Total Time: **1.70**

**BLD Ventures vs. SW NYC**
**Temporary Matter**
Prepare draft of attorney's fees affidavit in support of motion for default judgment.

**1.70**

**DRAFT**

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

### Monday, March 9

Unreleased: **3.00**
Total Time: **3.00**

### BLD Ventures vs. SW NYC

**3.00**

**DRAFT**

Temporary Matter

Continued draft of motion for default and memorandum in support of default judgment.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

**Wednesday, February 25**

Unreleased: **3.10**
Total Time: **3.10**

### BLD Ventures vs. SW NYC

**3.10**

**DRAFT**

Temporary Matter

Finalize motion for default judgment with declaration of Doug Pak.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

**Tuesday, February 24**

Unreleased: **2.80**
Total Time: **2.80**

### BLD Ventures vs. SW NYC

**2.80**

**DRAFT**

Temporary Matter

Receipt and review of client's edits to draft motion for default judgment and default judgment.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

**Tuesday, February 17**

Unreleased: **1.00**
Total Time: **1.00**

APPENDIX 000073

**BLD Ventures vs. SW NYC**

**Temporary Matter**

1.00
DRAFT

Receipt and review of client's edits to draft motion for default judgment and default judgment.

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

---

**Monday, February 16**

Unreleased: **2.00**
Total Time: **2.00**

**BLD Ventures vs. SW NYC**

**Temporary Matter**

2.00
DRAFT

Continued work on Drafts Motion and Judgment.

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

---

**Friday, February 13**

Unreleased: **3.20**
Total Time: **3.20**

**BLD Ventures vs. SW NYC**

**Temporary Matter**

3.20
DRAFT

Finalize motion for default judgment and final default judgment following telephone call with Carolyn Follis to include fraud findings and individual liability of owners.

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

---

**Tuesday, January 13**

Unreleased: **1.00**
Total Time: **1.00**

APPENDIX 000074

BLD Ventures vs. SW NYC

**1.00**

DRAFT

Temporary Matter

Meeting with Erick, Casey and ALustigman@olshanlaw.com, regarding "BLD - CSE and Andrew Teams Meeting".

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

**Monday, January 12**

Unreleased: **0.20**
Total Time: **0.20**

BLD Ventures vs. SW NYC

**0.20**

DRAFT

Temporary Matter

Email from Lustigman, Andrew B., regarding "RE: Clerk's Entry of Default(169384209.1) - Demand for Payment".

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

**Friday, January 9**

Unreleased: **2.00**
Total Time: **2.00**

BLD Ventures vs. SW NYC

**2.00**

DRAFT

Temporary Matter

Continued preparation of motion for default judgment.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

**Tuesday, January 6**

Unreleased: **3.00**
Total Time: **3.00**

BLD Ventures vs. SW NYC

**2.50**

DRAFT

Temporary Matter

Finalize motion for default judgment and reply to client regarding update on same.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

APPENDIX 000075

## BLD Ventures vs. SW NYC
Temporary Matter

Draft email to defendants informing them of default and demand for payment and warn of potential for personal liability.

**0.50**
DRAFT

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

---

**Thursday, December 4, 2025**

Unreleased: **3.30**
Total Time: **3.30**

### BLD Ventures vs. SW NYC
Temporary Matter

Continued work on motion for default judgment, order and required exhibits.

**3.30**
DRAFT

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

---

**Monday, December 1, 2025**

Unreleased: **2.00**
Total Time: **2.00**

### BLD Ventures vs. SW NYC
Temporary Matter

Sent email to Carolyn Follis, regarding "You were right....of course".

**2.00**
DRAFT

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

---

**Friday, November 21, 2025**

Unreleased: **1.50**
Total Time: **1.50**

**BLD Ventures vs. SW NYC**

Temporary Matter

1.00
DRAFT

Sent email to patrick@syracusespaghetti.com, regarding "RE: Spaghetti Warehouse Restaurants Inc. v Spaghetti Warehouse Restaurant of CNY LLC (Civil Action No. 3:25-cv-02727-E)".

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

**BLD Ventures vs. SW NYC**

Temporary Matter

0.30
DRAFT

Email from patrick@syracusespaghetti.com, regarding "RE: Spaghetti Warehouse Restaurants Inc. v Spaghetti Warehouse Restaurant of CNY LLC (Civil Action No. 3:25-cv-02727-E)".

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

**BLD Ventures vs. SW NYC**

Temporary Matter

0.20
DRAFT

Email from Erick, Casey, regarding "Quick Update".

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

| Tuesday, November 18, 2025 | Unreleased: **0.80** |
| | Total Time: **0.80** |

**BLD Ventures vs. SW NYC**

Temporary Matter

0.80
DRAFT

Email from carolyn.follis@lawyer.com, regarding "Re: My phone call today". Take proposed terms from client and relay same to opposing counsel.

Action:   NA - Not Applicable
Task:
Activity:
Location:   TXDA - TX - Dallas

| Monday, November 17, 2025 | Unreleased: **0.20** |
| | Total Time: **0.20** |

APPENDIX 000077

**BLD Ventures vs. SW NYC**
Temporary Matter

Telephone call with Carolyn Follis regarding conference call with defendants, our current damages, possible negotiations, and our response to defendants' request for an extension to file a response.

**0.20**
DRAFT

    Action:   NA - Not Applicable
    Task:
    Activity:
    Location:   TXDA - TX - Dallas

---

**Friday, November 14, 2025**

Unreleased: **0.80**
Total Time: **0.80**

**BLD Ventures vs. SW NYC**
Temporary Matter

Email from Patrick Dussol, regarding "Re: Spaghetti Warehouse Restaurants Inc. v Spaghetti Warehouse Restaurant of CNY LLC (Civil Action No. 3:25-cv-02727-E) ".

**0.10**
DRAFT

    Action:   NA - Not Applicable
    Task:
    Activity:
    Location:   TXDA - TX - Dallas

**BLD Ventures vs. SW NYC**
Temporary Matter

Email from carolyn.follis@lawyer.com, regarding "Re: FW: Spaghetti Warehouse Restaurants Inc. v Spaghetti Warehouse Restaurant of CNY LLC (Civil Action No. 3:25-cv-02727-E)".

**0.10**
DRAFT

    Action:   NA - Not Applicable
    Task:
    Activity:
    Location:   TXDA - TX - Dallas

**BLD Ventures vs. SW NYC**

Temporary Matter

Follow up telephone call with Defendants regarding complaint, possible settlement and damages; Email from carolyn.follis@lawyer.com, regarding "Re: FW: Spaghetti Warehouse Restaurants Inc. v Spaghetti Warehouse Restaurant of CNY LLC (Civil Action No. 3:25-cv-02727-E)".

**0.60**

DRAFT

    Action:   NA - Not Applicable
    Task:
    Activity:
    Location:   TXDA - TX - Dallas

---

**Thursday, November 13, 2025**

Unreleased: **0.90**
Total Time: **0.90**

**BLD Ventures vs. SW NYC**

Temporary Matter

Email from Siegel, Bill, regarding "RE: Motion to Sub and Des Lead Counsel.docx".

**0.70**

DRAFT

    Action:   NA - Not Applicable
    Task:
    Activity:
    Location:   TXDA - TX - Dallas

**BLD Ventures vs. SW NYC**

Temporary Matter

Email from Anthony Schlur, regarding "Spaghetti Warehouse Restaurants Inc. v Spaghetti Warehouse Restaurant of CNY LLC (Civil Action No. 3:25-cv-02727-E)".

**0.20**

DRAFT

    Action:   NA - Not Applicable
    Task:
    Activity:
    Location:   TXDA - TX - Dallas

---

**Monday, November 10, 2025**

Unreleased: **0.20**
Total Time: **0.20**

APPENDIX 000079

### BLD Ventures vs. SW NYC

**0.20**

DRAFT

Temporary Matter

Email from carolyn.follis@lawyer.com, regarding "Re: SWRI v SWCNY 3:25-cv-02727 v".

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

---

### Tuesday, October 28, 2025

Unreleased: **2.00**
Total Time: **2.00**

### BLD Ventures vs. SW NYC

**1.20**

DRAFT

Temporary Matter

Receipt and review of notice of successful service on defendant; calculate response deadline, set temporary restraining order/temporary injunction hearing; and inform client of same.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas

### BLD Ventures vs. SW NYC

**0.80**

DRAFT

Temporary Matter

Draft a notice of change of address and serve on all parties.

Action:   NA - Not Applicable

Task:

Activity:

Location:   TXDA - TX - Dallas